**BORN v. LAUBE et al.**
**No. 13304.**

United States Court of Appeals
Ninth Circuit.

May 26, 1954.

Rehearing Denied July 15, 1954.

Bailey E. Bell, William H. Sanders, Anchorage, Alaska, for appellant.

James E. Swan, Peter J. Kalamarides, Anchorage, Alaska, Sam Bassett, Bassett, Geisness & Vance, Seattle, Wash., for appellee.

Norman W. Harris, Decatur, Ala., amicus curiae.

Before HEALY, ORR, and LEMMON, Circuit Judges.

HEALY, Circuit Judge.

The plaintiff Born (hereafter appellant) was a member in good standing of Local No. 959 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, herein sometimes referred to as the International or the Teamsters. The headquarters of the Local is at Anchorage, Alaska; that of the parent Union—International—at Indianapolis, Indiana. International's constitution gives the president of that organization broad powers over the affairs of its locals, including the authority under certain circumstances of appointing a trustee for the local and conferring on the trustee virtually dictatorial authority. For reasons not fully explained one George Cease was appointed trustee of the Anchorage local. While this situation prevailed appellant, for lack of employment in his customary calling of teamster, obtained work as an ordinary laborer with the Morrison-Knudsen construction firm. Upon hearing of this Cease issued to appellant, without the latter's solicitation, a withdrawal card. This card by its

terms entitled appellant to readmission to the Teamsters' union at any time he should resume a teamster's work.

In December of 1950 a job as truck or bus driver was offered appellant by the concern for which he was working. This employer had a collective bargaining agreement with the Teamsters which required that all the employer's truck drivers be members of that union in good standing. Appellant therefore tendered the Local his withdrawal card and all dues and assessments then owed and requested readmission or reinstatement in the Teamsters. Because of a feeling of animosity toward appellant on the part of Cease, this request was refused; and Cease informed the Morrison-Knudsen company that if appellant were not taken off the job as bus or truck driver all of its other truck drivers would be called off the work. In consequence of the threat appellant was removed as a truck driver and put back to work as an ordinary laborer at the lesser wage paid such workers.

Appellant thereupon brought this action against Cease, the Local and International, setting up in two causes of action the facts heretofore related. By his first cause he sought reinstatement into the union, and by his second he asked a money judgment to compensate his loss of earnings, and also prayed for exemplary damages. Upon trial to a jury a verdict was returned for compensatory damages in the sum of $3,000 and for punitive damages in the sum of $5,-000. Thereafter, and during the pendency of a motion for a new trial, defendants raised the question of the court's jurisdiction to hear the case. The court (Judge Dimond) dismissed the action on the ground that the subject matter thereof was within the exclusive jurisdiction of the National Labor Relations Board.[1]

We think Judge Dimond's ruling was correct. Clearly "commerce" is involved in the sense of the Labor Management Act of 1947, 129 U.S.C.A. § 151

et seq.; and the behavior of International's agent, Cease, amounted to an unfair labor practice under the Act's terms. "Commerce" is there defined thus: "The term 'commerce' means trade, traffic, commerce, transportation, or communication among the several States, or between the District of Columbia or any Territory of the United States and any State or other Territory, or between any foreign country and any State, Territory, or the District of Columbia, *or within the District of Columbia or any Territory,* or between points in the same State but through any other State or any Territory or the District of Columbia or any foreign country." [Emphasis supplied.] 29 U.S.C.A. § 152(6). And the conduct of International's agent aptly fits the definition contained in 29 U.S.C.A. § 158(b) (2), reading: "(b) It shall be an unfair labor practice for a labor organization or its agents—(1) * * * (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership; * * *."

Thus the sole problem posed is whether the existence of jurisdiction in the Labor Board precludes the entertainment of the suit by the district court. The National Labor Relations Act, § 10 (a), expressly declared the Board's power to take cognizance of unfair labor practices affecting commerce to be exclusive. The section as reworded in the Labor Management Act of 1947, 29 U.S.C.A. § 160(a), does not contain the earlier express declaration; and on this fact appellant predicates much of his argument. See, however, the Fourth Circuit decision in Amazon Cotton Mill v. Textile Workers Union, 167 F.2d 183, hold-

---

1. The opinion is reported in D.C., 101 F.Supp. 473.

ing that a union may not sue the employer in behalf of its members for reinstatement and damages for loss of pay consequent on a strike wrongly provoked by an employer. The court, 167 F.2d at page 187 of its opinion, said: "The change in the statute upon which reliance is placed was clearly intended, not to vest the courts with general jurisdiction over unfair labor practices, but to recognize the jurisdiction vested in the courts by section 10, subsections (j) and (l), section 208, and section 303, to which we have heretofore made reference, as well as the power in the Board, conferred by the proviso in section 10 (a) to cede jurisdiction to state agencies in certain cases." This court, citing with approval the foregoing decision, has interpreted the statutory change in like manner. Schatte v. International Alliance, 9 Cir., 182 F.2d 158, 166, certiorari denied 340 U.S. 827, 71 S.Ct. 64, 95 L.Ed. 608.

■ It is argued that the Board, although having authority to require the offending union to reinstate and financially to make whole the victim of the unfair labor practice, is without power to assess punitive damages; consequently, the view should be taken that Congress did not intend to preclude the victim from enforcing this private right in an action at common law. However, we think it evident that since the Act provides a precedure for redress and a corresponding remedy, both the procedure and the remedy are exclusive in the absence of an express provision or Board delegation to the contrary. As said in Nathanson v. NLRB, 344 U.S. 25, 27, 73

S.Ct. 80, 82; "A back pay order is a reparation order designed to vindicate the public policy of the statute by making the employees whole for losses suffered on account of an unfair labor practice. (Citation). Congress has made the Board the only party entitled to enforce the Act." A remark of Justice Holmes in Charleston & Western Carolina Railway Co. v. Varnville Furniture Company, 237 U.S. 597, 604, 35 S.Ct. 715, 717, 59 L.Ed. 1137, though dealing with an unrelated subject, is pertinent here. "When Congress," he said, "has taken the particular subject-matter in hand, coincidence is as ineffective as opposition, and a state law is not to be declared a help because it attempts to go farther than Congress has seen fit to go."

Decisions touching the subject under inquiry, of which there are many, have quite uniformly adhered to the view that the Act's provisions for a comprehensive remedy preclude other action by way of a different or additional remedy for the correction of the same grievance. It would be a work of supererogation to cite or to review these authorities. A very late decision of the Supreme Court, namely Garner v. Teamsters, Chauffeurs and Helpers Local Union No. 776 (A.F. L.) Union, 346 U.S. 485, 74 S.Ct. 161, is illustrative of the general trend of thought in that tribunal. The discussion there shows the imminent likelihood of conflict where the attempt is made to apply different remedies on the basis of an assumed distinction between rights which are public and those which are claimed, as here, to be purely private.

Affirmed.