STERLING *v.* LOCAL 438, LIBERTY ASSOCIATION
OF STEAM AND POWER PIPE FITTERS AND
HELPERS' ASSOCIATION ET AL.

[No. 135, October Term, 1954.]

134

*Decided April 21, 1955.*

*Motion for rehearing, filed May 19, 1955, denied June 8, 1955.*

*Petition for certiorari filed in Supreme Court of United States, August 24, 1955.*

The cause was argued before BRUNE, C. J., DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Louis R. Milio* and *Lester H. Crowther,* for appellant.

*Max Sokol* and *Thomas X. Dunn,* with whom were *Melvin J. Sykes* and *Martin F. O'Donoghue,* for appellees.

HAMMOND, J., delivered the opinion of the Court.

The challenge in this appeal is to 'the granting of a summary judgment in favor of two affiliated local unions and a third, an international union and the parent of the other two, in a suit against them by the appellant to recover damages for his wrongful dismissal as business agent of one of the local unions and for their subsequent continued prevention of his right to work at his trade.

The summary judgment was granted as to the first claim on the basis that an equity suit brought two years before by the appellant against two of the three defendants, in an effort to recover his lost position, was *res judicata* of his right to damages for the loss of the posi-

tion, and as to the second claim, on the basis that the Labor Management Relations Act of 1947 provided an exclusive remedy for the unfair labor practices of which he complained.

In 1950 the appellant filed an equity proceeding in the Circuit Court of Baltimore City against Local 438, Liberty Association of Steam and Power Pipe Fitters and Helpers' Association, the local union, and United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, the international union and parent of the local. The bill of complaint, as finally amended, alleged that the appellant had been duly elected as business agent by the local union at an election held on December 13, 1949 and that the defendants nevertheless conspired to deprive him of his office, and did so by illegally declaring the election void and by holding another election on January 24, 1950, at which the appellant was defeated by a rival candidate. It was alleged that the appellant had appealed to the General President of the international union and its Executive Board, claiming to have been duly elected. The president, and then the board after a hearing, denied the appeal and confirmed the election of the other candidate. The bill alleged that as a result of these acts, which were unlawful, fraudulent and contrary to the controlling constitution and by-laws of both unions, the appellant was deprived of his salary of $125.00 a week as business agent, the use of the union automobile and other advantages of office. The prayers for relief were that an injunction be issued declaring that the appellant was the duly elected business agent, ordering his admission and installation in that office and commanding the defendants not to interfere in any manner with the plaintiff in the exercise of his duties as business agent or in the enjoyment of the benefits and remuneration associated therewith, and for other and further relief.

To the bill as finally amended, the defendants demurred and answered in a single pleading. A principal ground

of the demurrer was that the bill showed that the term of office for one year, to which the appellant claimed he had been elected on December 13, 1949, had expired by the time the demurrer was filed, so that the matter was moot. The answer set out at great length, and in detail, the justification, as the defendants saw it, for their conduct and the merits of the case. The issues raised by the demurrer and answer were tried together in January, 1951. The trial lasted almost a week. Much testimony was introduced, including four volumes which had been taken on the appellant's appeal to the Executive Board of the international union. At the conclusion of the case, the chancellor gave a comprehensive oral opinion, in which he found, as a matter of fact, that the election of December 13, 1949 had been illegal and invalid and that the unions were within their rights in so holding. He then said: "I find specifically, and as a matter of fact, as applied both to the defendant United Association, and to the Local, and the individual defendants that the action of President Durkin and the General Executive Board was not arbitrary * * *. I find, as a matter of fact, specifically with respect to the United Association and the Local, and the individual defendants, that there is no sufficient evidence of fraud which would justify this Court overruling the decision arrived at by General President Durkin, and subsequently after a hearing 'de novo' by the General Executive Board." The chancellor then took up the specific relief prayed and found that the prayer for injunction must be denied because, even if the election of December 13, 1949 be assumed to be valid, the matter would be moot. A similar ruling was made as to the prayer asking that the holding of the second election be enjoined, since it had already taken place. The third prayer, which the court said should not be granted, was that the defendants be enjoined and restrained from penalizing members of the local union because of any activities engaged in by them on behalf of the candidacy of the appellant. As to this,

the chancellor said: "* * * I find no facts sufficient to justify any of the relief asked for by the Plaintiff * * *." The court then pointed out to the appellant, who had aided in the conduct of his own case, that he had a right of appeal to the Court of Appeals from the decree which was to be signed dismissing the bill, and that this must be taken within thirty days and the record transmitted within sixty days thereafter. The appellant then asked the chancellor: "In other words, you are allowing me no relief whatsoever? In other words, you are declaring the election of December 13th, 1949, illegal, is that right?" The chancellor answered: "I am declaring the election of December the 13th, 1949 illegal in the same way that General President Durkin and the General Executive Board found it illegal." When asked if the election of January 24, 1950 had been held to be a fair election, the chancellor's answer was that since the election had been held, the matter was moot and he would not have to pass on that question. No appeal was taken from the decree of the court which dismissed the bill of complaint without qualification.

On April 21, 1953, over two years later, the suit at law, which is now before us, was filed against the defendants in the previous case, and also against a third defendant, Liberty Steamfitters Protective Association, Inc., a Maryland corporation which had not been a party of record in the first case. The first count of the amended declaration makes the same allegations as the bill of complaint in the equity case. It is set forth that at the election of December 13, 1949, the appellant was elected business agent at a salary of one hundred twenty-five dollars per week, plus an expense account and the use of an automobile, and that the defendants conspired to prevent the appellant from being installed in the office of business agent, and that at another meeting, a rival was elected to the office of busines agent. It is said that of all this was contrary to the by-laws and constitution of the local and international unions and the actions of

the President and Executive Board in declaring the election invalid and holding another election, were illegal and wrongful.

The second count of the amended declaration alleges that after his ouster, the appellant had returned to his trade as a steam fitter and from about May, 1950 on, the defendants had prevented him from working at his trade "* * * by wrongfully, illegally and fraudulently refusing to give Plaintiff union clearance, that is, by refusing to issue to the plaintiff the slip or employment order which is necessary to be presented on the job before a member of said Local 438 will be permitted to work * * *." It is alleged that the purpose of the defendants in refusing union clearance was to deprive him of his membership in the local by making him financially unable to pay his dues, and thus to prevent him from participating in union activities. It is charged that as a direct and proximate result of the local's activities, the appellant suffered not only loss of wages but also "severe heart attacks, causing him great disability and suffering, and requiring him to incur a large amount of expense for hospital and medical treatment."

The appellees demurred to each count of the declaration as particularized. The demurrers were overruled and the appellees filed pleas of limitations, general issue pleas and pleas of *res judicata* to each count of the declaration. When the case was at issue and ready for trial in the Superior Court of Baltimore City, appellees filed suggestions and affidavits of removal and the case was removed to the Circuit Court for Baltimore County. Thereafter, the appellees filed a motion for a summary judgment, with affidavits, which alleged that the first count of the declaration was *res judicata*, and that the second count charged an unfair labor practice, which was exclusively within the jurisdiction of the National Labor Relations Board and which, consequently, the trial court was without power to entertain. To support the defense of *res judicata*, the appellees filed as exhibits

to their motion, certified copies of the equity proceedings in the Circuit Court of Baltimore City. The motion itself set out in parallel columns in *haec verba* the essential allegations of the first count of the amended declaration, the comparable allegations in the bill of complaint and the findings of the chancellor, with respect to each issue raised. To support the motion for summary judgment as to the second count, the appellees filed an affidavit of the business agent of the local union, and an affidavit of the executive managers of the Mechanical Contractors Association of Maryland, Inc., an association of employers of members of the local union with whom it had entered into a collective bargaining agreement. These affidavits were filed to show that the claimed denial of union clearance was as to matters and contracts in, or closely affecting, interstate commerce so as to give jurisdiction to the National Labor Relations Board.

The appellant answered the motion for summary judgment, alleging that there was a genuine dispute as to material facts. No counter affidavit was filed.

After hearing, the Circuit Court for Baltimore County granted the motion for summary judgment on both counts. A motion for rehearing was denied and the original order affirmed by the court.

The appellant contends first, that the summary judgment was improperly entered on the pleadings. It is said that the affidavits do not meet the necessary requirements because they contain allegations of fact as to which the affiants do not have actual knowledge and as to which they would not be able to testify, as well as that they contain many statements which are but conclusions of law. It is said that the appellant's answer shows also that there is a genuine controversy as to material facts. We think the appellant is not on sound grounds in his contentions. Even before the rules permitted summary judgments, the defense of *res judicata* could be made by demurrer where the facts and the nature of the prior adjudication appeared on the face of

the pleadings. *Snodgrass v. Stubbs,* 192 Md. 287. It is clear that under the present rules of practice and procedure, motions for summary judgments may be granted on the ground of *res judicata* under similar circumstances. See *Mellen v. Hirsch,* 8 Federal Rules Decisions 248, a decision of Judge Chesnut in the District Court for the District of Maryland. See also *Billings Utility Co. v. Advisory Committee,* 135 F. 2d 108; *Eller v. Paul Revere Life Ins. Co.,* 138 F. 2d 403; *Sabin v. Home Owners' Loan Corp.,* 151 F. 2d 541.

In the case before us, there is really no dispute of fact. The parties differ in the significance and legal consequences to be drawn from facts which are not themselves in dispute. There is no claim that the transcript of the prior proceedings in the equity case is inaccurate. The allegations in the affidavits are as to matters shown by records made in the ordinary course of business by the union and the Contractors Association, respectively, and the affiants would be able to testify as to them. There was no counter affidavit by the appellant as to any fact on which he relies and as to which the appellees do not agree. The situation is similar to that in *Mellen v. Hirsch, supra,* where Judge Chesnut pointed out that: "* * * the only issue now open for further litigation between the parties in this case is merely a question of law and not one of fact."

We turn then to whether the action of the court in granting the motion for summary judgment was correct. We think that it was. Estoppel by judgment, which is *res judicata,* may be direct or collateral. If the second suit is between the same parties and is upon the same cause of action, a judgment in the earlier case on the merits is an absolute bar, not only as to all matters which were litigated in the earlier case, but as to all matters which could have been litigated. If, in a second suit between the same parties, even though the cause of action is different, any determination of fact, which was actu-

ally litigated in the first case, is conclusive in the second case. *Lebrun v. Marcey,* 199 Md. 223, 226, *et seq.*

We think that the decree in the equity case was conclusive of the claim asserted by the first count of the amended declaration as a direct estoppel. We find the cause of action in equity and that asserted in the first count of the declaration before us now to be the same. The appellant claimed in equity, as he does now at law, that he had a legal right to be business agent and that the appellees violated this legal right by holding invalid the election by virtue of which his right arose. The Supreme Court, in *Baltimore Steamship Co. v. Phillips,* 274 U. S. 316, 71 L. Ed. 1069, said that a cause of action is a violation of one right by a single legal wrong. In *F. L. Mendez & Co. v. General Motors Corp.,* 161 F. 2d 695, 696, the Court pointed out that "Every legally valid cause of action must involve a right possessed by the plaintiff and a duty devolving upon defendant to observe that right; a wrong done by defendant which results in a breach of defendant's duty and violation of the right of the plaintiff; a remedial right recognized by the law in favor of plaintiff and a corresponding reciprocal duty resting on the defendant * * *." Every element specified in the definition was the same in the equity case as in the first count of the declaration at law. In *F. L. Mendez & Co. v. General Motors Corp.,* from which we have just quoted, the complaint was that the plaintiff had been wrongfully deprived of an automobile franchise. One suit charged a conspiracy in violation of the Sherman Anti-Trust Act and another claimed a violation of the Clayton Act by direct action. It was held that the judgment in the first suit was *res judicata* as to the claim in the second suit. A similar ruling was made in *Williamson v. Columbia Gas & Electric Corp.,* 186 F. 2d 464. In *Atlantic Meat Co. v. Reconstruction Finance Corporation,* 69 F. Supp. 32, the plaintiff claimed a right to subsidy payments for meat products. Relief was sought in the Emergency Court of Appeals by asking that there

be set aside an amendment to a regulation which barred plaintiff's right. Evidence was taken and relief denied. The plaintiff sued in a District Court for a declaration on another ground that it had a right to the subsidy and for damages, and the defense of *res judicata* was upheld on the ground that the cause of action was the same as in the first case. In *Norton v. Planters Fertilizer & Phosphate Co.* (S. C.), 33 S. E. 2d 247, the action was at law for damages because the defendant had procured a deed from the plaintiff by fraud. The matter was settled and terminated by order of court. Subsequently, there was a suit in equity to set aside the deed and the first suit was held to be *res judicata* of the second. *Restatement of Judgments*, Sec. 46, p. 179, says that if, in a suit for specific performance of a contract there is a decree for defendant on merits, plaintiff is precluded from another equity suit or action at law for damages for breach of the contract. In *Walzl v. King*, 113 Md. 550, this Court held that a decree for complainant in a suit for specific performance where no damages were claimed, barred, as direct estoppel, a suit at law for damages.

Appellant says that the equity case was decided on the ground that the matter was moot and not on the merits. This contention must be rejected on two grounds. The first is that where, as here, there is an unqualified dismissal of a bill of complaint, the presumption is that the issue was disposed of on the merits and that the decree passed is *res judicata*. The second is that not only is there no showing that the presumption is incorrect in this case, but the record makes it plain that the case was decided on the merits as to the vital issue, that is, the validity of the 1949 election, by virtue of which the appellant claims. The cases make it clear that where the court has gone into whether the complainant is entitled to the relief sought, even though there are other questions in the case, such as limitations or venue or mootness, and the bill is dismissed, the matter is *res judicata* unless

the dismissal is expressly without prejudice to the rights of the complainant. *Bailey v. Bailey,* 181 Md. 385, 391; *Martin v. Evans,* 85 Md. 8; *Fledderman v. Fledderman,* 112 Md. 226; *Restatement of Judgments,* Sec. 49, p. 193, 194, 196; *Sacks v. Stecker,* 62 F. 2d 65.

On the second ground, the law is likewise clear. *Restatement of Judgments,* Sec. 68, p. 296, states the law to be that "Where a question of fact is put in issue by the pleadings and is submitted to the jury or other trier of the facts for its determination and it is determined, the question of fact is actually litigated, and the judgment is conclusive between the parties in a subsequent action on a different cause of action." At p. 305 in the same volume, it is pointed out that this rule is the same in equity as it is in law, and applies when one proceeding is in equity and one is in law. In *Martin v. Evans,* cited above, the suit was in trover for bonds said to have been converted. The plea of *res judicata* was based on a prior suit in equity by the plaintiff against the defendants, seeking to impress the bonds with a trust. In the equity case, testimony was taken and the court made findings of fact in favor of the defendants, but also indicated that it was without power of relief in any event because the suit essentially was a claim for money for which there was an adequate remedy at law. The plaintiff argued that because of this statement of the court in the equity case, the prior decision was not *res judicata* because it was not really on the merits. Judge McSherry, for the Court, rejected the argument and held that the fundamental inquiry in the equity case was whether the plaintiff did own the bonds, and said that the chancellor had decided explicitly that the bonds were not her property. The holding was that it was the decree of the lower court dismissing the bill without qualification which controlled, and not the opinion of the court indicating that the dismissal could have been for lack of jurisdiction, since the trier of the facts made a finding of fact on an issue presented by the pleadings as to which testimony was taken.

The same can be said of the appeal before us. The chancellor in the equity suit found as a fact that the crucial election was invalid. See also *Whitehurst v. Rogers,* 38 Md. 503; *Williams v. Messick,* 177 Md. 605; and cases in the note in 133 A. L. R. 840. There is certainly at least a collateral estoppel as to the fact that the 1949 election was invalid and properly set aside. The appellant cannot recover under the first count if this has been conclusively determined, as it has.

The fact that a third defendant was joined in the suit at law, while there were only two in the equity case, does not affect the result. The test in the rule of *res judicata* that the former suit must have been against the same parties, relies on substance and not form. *Myers v. Gordon,* 165 Md. 534; *Williams v. Messick, supra. Ugast v. LaFontaine,* 189 Md. 227. In the instant case, it is alleged by the appellant himself that the officers of the local union and of the new defendant were the same and were acting in all things on behalf of the new defendant, and that the local union and the new defendant were to all intents and purposes one organization.

The defense of *res judicata* to the claim asserted by the first count of the amended declaration was well taken and the action of the court in granting the summary judgment as to this count was correct.

We think, too, that the appellees were entitled to summary judgment on the second count of the amended declaration. Without deciding, we may assume, as the appellant claims, that the matters alleged in that count charge a common law tort, for which he would be entitled to recover from the local union the wages he had lost. *Lucke v. The Clothing Cutters and Trimmers Assembly,* 77 Md. 396; *Willner v. Silverman,* 109 Md. 341. This assumption leads us to consider whether the Taft-Hartley Act provides that the conduct charged to the unions constituted an unfair labor practice, which entitled the victim to be made whole in money for his loss of wages, through the National Labor Relations Board and, so,

deprived the State courts of the right to grant similar relief. The Act, in Sec. 8 (a) (3), 29 U. S. C. A. (App.) 158 (a) (3) and Sec. 8 (b) (2), 29 U. S. C. A. (App.) 158 (b) (2), makes it an unfair labor practice for a labor organization, or its agents, to cause or attempt to cause an employer to discriminate against an employee in regard to hire or tenure or any term or condition of employment. The Supreme Court has said that a union which discriminates against one of its members by refusing to issue him a clearance card, is guilty of an unfair labor practice where the member is refused employment as a result. *Radio Officers' Union v. N.L.R.B.,* 347 U. S. 17, 98 L. Ed. 455. The Court held in that case that the union can be required to reimburse the employee for back pay without joining the employer in the complaint. In *Garner v. Teamsters, C. & H. Union,* 346 U. S. 485, 98 L. Ed. 228, a Pennsylvania equity court enjoined peaceful picketing of an interstate trucking company that was conducted for the purpose of inducing employees of the company to join the union. The Supreme Court held that the company's grievance fell within the jurisdiction of the National Labor Relations Board as an unfair labor practice and that State remedies were excluded, even though that remedy sought to enforce or protect a private right. The Court said: "We conclude that when federal power constitutionally is exerted for the protection of public or private interests, or both, it becomes the supreme law of the land and cannot be curtailed, circumvented or extended by a state procedure merely because it will apply some doctrine of private right. * * * On the basis of the allegations, the petitioners could have presented this grievance to the National Labor Relations Board. The respondents were subject to being summoned before that body to justify their conduct. We think the grievance was not subject to litigation in the tribunals of the State."

The appellees contend that the *Garner* case controls. The appellant, on the other hand, relies upon *United*

*Construction Workers v. Laburnum Construction Corp.,*
347 U. S. 656, 98 L. Ed. 1025, where the Supreme Court
held that the State court had jurisdiction of a common
law tort of violence committed by the union against an
employer, even though the conduct of the union consti-
tuted an unfair labor practice. *Certiorari* was granted
limited to the question of whether the National Labor
Relations Board had exclusive jurisdiction in light of
the conduct involved. The Court held that Congress
had neither provided nor suggested any substitute for
the traditional state court procedure for collecting dam-
ages for violence. It relied on the legislative history of
the Taft-Hartley Act to show that if an employee uses
or threatens violence and violates the law of the state,
there might well be two remedies for that kind of act,
that afforded by the Taft-Hartley Act, which would re-
quire cessation of the unlawful act but could not afford
damages, and that provided by the state which could
give damages. See also *Allen Bradley Local v. Wiscon-
sin Employment Relations Board,* 315 U. S. 740, 86 L. Ed.
1154.

Here the very rights of a worker which Congress
afforded protection by the National Labor Relations
Board are sought by appellant to be protected by the
courts of Maryland. Congress has provided the exact
type of remedy which the state could afford, that is, the
Board is empowered, not only to require the union to
cease its unlawful activity and discrimination, but to
pay to the injured worker the same amount and type of
compensatory damages he could recover in the state
courts. No question of the police power of the State
is involved. It is no answer to say, as the appellant
does, that the statute of limitations under the Taft-Hart-
ley Act is six months, whereas in the state court it is
three years, or that he cannot recover punitive damages
before the Board. The appellant himself has waited
several years without seeking relief from the Board.
He could have applied to it as soon as his rights were

affronted, and he cannot pull himself up by his boot-straps by waiting several years and claiming inadequacy of remedy because of lapse of time. In *Born v. Laube,* 213 F. 2d 407, there was an action against a union by a member who sought reinstatment and compensatory and exemplary damages for the wrongful refusal of the union to reinstate him. It was argued that the National Labor Relations Act did not afford the same damages as would the court, since the Board could not assess punitive damages. The Court said: "* * * we think it evident that since the Act provides a procedure for redress and a corresponding remedy, both the procedure and the remedy are exclusive in the absence of an express provision or Board delegation to the contrary." The Court then quoted from *Nathanson v. NLRB,* 344 U. S. 25: " 'A back pay order is a reparation order designed to vindicate the public policy of the statute by making the employees whole for losses suffered on account of an unfair labor practice. * * * Congress has made the Board the only party entitled to enforce the Act'." After the *Born v. Laube* case was first decided, the Supreme Court decided the *Laburnum* case. Then a petition was filed for rehearing in the *Born* case, and the Court's decision on the petition for rehearing is reported, again as *Born v. Laube,* in 214 F. 2d 349. In denying the rehearing the Court said: "The petition for rehearing is predicated largely upon the claim that our decision is in conflict with the intervening holding of the Supreme Court in *United Construction Workers v. Laburnum Construction Corporation,* 347 U. S. 656, 74 S. Ct. 833.

"We have carefully considered the *Laburnum* decision and are of opinion that it is distinguishable inasmuch as the complaining party there, under the Labor Management Act, 29 U. S. C. A. Sec. 151, *et seq.,* was wholly without remedy in damages for the tortious conduct of the Union. Here the complaining employee had availabe the remedy of reinstatement with back pay. Moreover, unlike *Laburnum,* there was no violence or threat of

148

violence which might serve to bring the cause within the area of the Territorial police power." The Supreme Court denied *certiorari* October 18, 1954, 348 U. S. 855, 99 L. Ed. Adv., p. 44.

In *Mahoney v. Sailors' Union of the Pacific*, 275 P. 2d 440, the highest court of Washington reached the same conclusion as *Born v. Laube, supra.* See also *Weber v. Anheuser-Busch, Inc.*, 348 U. S. 468, 99 L. E. (Advance p. 386). The court was correct in granting the motion for summary judgment as to the second count.

*Judgment affirmed, with costs.*