[Civ. No. 16536.   First Dist., Div. One.   June 12, 1956.]

MARCOS GONZALES, Respondent, v. INTERNATIONAL ASSOCIATION OF MACHINISTS (an Unincorporated Association) et al., Appellants.

Phoenix & Kennedy, Phoenix, Kennedy & Durham and Eugene K. Kennedy for Appellants.

McMurray, Brotsky, Walker, Bancroft & Tepper and Lloyd E. McMurray for Respondent.

BRAY, J.—The superior court rendered judgment reinstating petitioner in the International Association of Machinists and awarding him $6,800 damages for loss of wages and $2,500 for mental distress. All respondents[1] in the lower court are appellants here.

## QUESTIONS PRESENTED

1. Was petitioner excused from exhausting his administrative remedies?

2. Did the lodge violate the constitutions of the organization?

3. Are the International President's interpretations binding on the courts?

4. Damages: (a) Does the Labor Management Relations Act, 1947, 29 U.S.C.A. § 141 et seq. (Taft-Hartley Act) apply? (b) Is the award supported?

## FACTS

This proceeding grew out of the recommendation in 1948 by petitioner, as a member of the investigating committee of the lodge, that one Nelson be denied admission to membership. Thereafter petitioner was physically assaulted by Nelson. Petitioner, believing that the assault was instigated by Charles Truax, who was the International Representative, filed suit in the superior court against both Nelson and Truax for damages for injuries received in the assault. A nonsuit was granted in favor of Truax and a judgment in favor of petitioner against Nelson for $10,000. July 7, 1950, petitioner was tried by the trial committee of the lodge for violation of article XXV, section 1, Grand Lodge Constitution.[2] July

---

[1] They are the International Association of Machinists, an unincorporated association, Thomas E. McShane, and A. C. McGraw, as International Representatives thereof; International Association of Machinists, Local Lodge No. 68, an unincorporated association, Robert Roller, as President of said Local Lodge, Reese Conte, as Secretary of said Local Lodge, Edward Peck, as Treasurer of said Local Lodge.

[2] ". . . any member . . . circulating or causing in any manner to be circulated any false or malicious statement . . . falsely or maliciously attacking the character, impugning the motives or questioning the integrity of any officer of the Grand Lodge . . ." The charges were preferred by Truax and were based upon the allegations in petitioner's complaint in the civil action that Truax directed and ordered Nelson to perpetrate the assault and battery on petitioner.

19th, the trial committee at the regular bimonthly meeting submitted to the lodge its verdict—"guilty as charged," and its recommendation that petitioner be expelled from the association. Thereupon pursuant to article K, section 7 of the constitution, the membership present voted on the action of the committee.[3] The vote was 43-31 against sustaining the verdict.[4] August 2, 1950, at a regular meeting a motion was made to rescind the action of July 19th rejecting the verdict of the trial committee. A standing vote showed 38 yes, 4 no. Thereupon a secret ballot vote was taken on a motion to sustain the "guilty" verdict of the committee. This resulted in 31 yes, 12 no, 2 blank ballots. A secret ballot vote was then taken on a motion to expel petitioner from the association as recommended by the committee. This resulted in 29 yes, 14 no, 1 blank. August 2d petitioner appealed to the International President from this action of the lodge, claiming among other things that the action of the lodge on August 2d, after his vindication on July 19th, was a violation of the constitution, and also that the vote for his expulsion was not the required "two-thirds ($\frac{2}{3}$) vote of those voting." November 13th, the International President sent a letter to the president and secretary of the lodge, in which he made formal findings, conclusions and decision. He upheld the conviction of petitioner, but decided that expulsion was too severe a penalty and then modified the penalty to a fine of $500 to be paid the lodge, and a "complete and appropriate apology" in writing from petitioner to Truax, copy thereof to be sent to the president. January 30, 1951, petitioner received a letter from the General Secretary-Treasurer of the International to the effect that on his appeal of the decision of the International President to the Executive Council that body had unanimously sustained the decision. "Accordingly, President Hayes' decision of November 13, fining you $500.00, becomes the decision of the Executive Council, and our records have been so indicated." February 23, 1951, in reply to a letter from petitioner, asking the course to be followed in appealing the decision of the Executive Council, the General Secretary-Treasurer wrote petitioner calling attention to section 6, article

[3]This provides that the recommendation of the committee may be amended, rejected, or another punishment substituted by a majority vote of those voting. To expel, however, the required vote is two-thirds of those voting.

[4]July 28, 1950, Truax appealed to the Grand Lodge from this action of the lodge. August 22d, he withdrew his appeal.

XXV, of the constitution[5] which provides for appeals to a convention of the Grand Lodge and stated that his appeal could not be sent to the convention nor considered by it "until you have carried out the decision of the Executive Council, which means you must pay the fine of $500.00 before you can appeal to the convention." February 11, 1952, the lodge's financial secretary notified petitioner that the lodge would no longer accept dues from him until he had complied with the president's decision by paying the $500 fine and making a complete and appropriate apology to Truax. February 20th, petitioner formally refused to pay the fine or make apology. December 3, 1952, petitioner filed his application for a writ of mandate in the superior court.

■ Whatever confusion there may have been in this state as to the right of a trade union member to appeal to the courts for redress from his union's action, without first exhausting all remedies provided by its constitution and by-laws, such confusion has been resolved and a definite rule established in the recently decided *Holderby* v. *International Union etc. Engineers*, 45 Cal.2d 843 [291 P.2d 463]. There the plaintiff was expelled from the union in complete violation of the union's constitution. In holding that he could not appeal to the courts without first availing himself of the remedies provided in the constitution for a review by the general board of the action taken against him, the court refused to follow cases like *Weber* v. *Marine Cooks' & Stewards' Assn.*, 93 Cal. App.2d 327 [208 P.2d 1009], which had held that "where an organization has violated its own laws and arbitrarily violated a member's property rights the rule of exhaustion of remedies by appeal to a higher body within the organization need not be adhered to before direct resort to a judicial tribunal." (P. 338.) It then ruled that the union member must exhaust the union remedies before he may appeal to the courts, no matter what the initial violation of union rules may have been, and that the only exception to the general rule is if there has been a violation of the rules on appeal. "It is only

[5]Before any appeal can be taken to the convention or to the membership, at large by referendum, "all orders of the Executive Council in relation thereto, must be fully complied with . . . and in no case shall . . . any . . . member . . . appeal to the civil courts for redress until after having exhausted all rights of appeal under the provisions of this Constitution." Section 10, article K, constitution, likewise requires that a member of a local lodge must exhaust all rights of appeal under the constitution of both the Grand Lodge and the local lodge before appealing to the courts.

when the organization violates its rules for appellate review or upon a showing that it would be futile to invoke them that the further pursuit of internal relief is excused. The violation of its own rules which inflicts the initial wrong furnishes no right for direct resort to the courts.'' (P. 849.) Therefore we are limited to a determination of whether the union rules on appeal were violated in any respect or whether further pursuit of internal relief is excused.

1. *Administrative Remedy.*

Petitioner followed his administrative remedy through an appeal to the International President and then from his decision to the Executive Council. He did not proceed with an appeal either to the convention of the Grand Lodge or to the membership at large. He was barred from so doing by the requirement that he first fully comply with the orders of the Executive Council.

Petitioner contends that the International President and the Executive Council violated the union rules on appeal in deciding that the required two-thirds vote had expelled him and in changing the penalty from expulsion to a fine and apology. As to the finding of the president that there was a two-thirds vote in favor of expulsion, such finding, if erroneous, could not alone justify noncompliance by petitioner with the appeal rules of the organization. ■ Just as a court has the power to decide wrongly as well as rightly, the president on appeal likewise has such power and a wrong decision is not the violation of the organization's rules on appeal which under the Holderby case justifies the member in refusing to further follow the union's rules on appeal. The constitution provides (art. V, § 1) that the president shall decide all constitutional questions subject, however, to the right of appeal.[6] However, the imposition of an apology requirement would appear to be in a different category. Article XXV, section 1, the section which petitioner was charged with violating, provides a penalty of fine or expulsion, or both. That section is in the Grand Lodge constitution. In

---

[6]Nor do we think that the president violated any rules in prescribing a fine *prior to approval* thereof by the Executive Council. Section 8, article K, provides that no fine in excess of $50 ''shall be imposed upon any member . . . unless the same is first approved by the Executive Council.'' Having in mind that under the appellate procedure an appeal is first to the president and thereafter to the Executive Council, and that this provision is in the constitution of the lodge and not in that of the Grand Lodge, it is obvious that it does not apply to a decision on appeal.

the local lodge constitution (art. K, § 7) it is provided that the membership may substitute another punishment for that recommended by the trial committee. It is questionable whether this gives the membership the right to substitute any penalty other than that included in the phrase "fine or expulsion or both" in the penalty section of the Grand Lodge constitution. However, we can find no authorization to the president, upon appeal, to change the penalty voted by the lodge. It would appear that his authority is either to affirm or reject the action of the lodge, and in the event he affirms its action in finding a member guilty but, as here, feels that the penalty is too great, he may reverse the penalty but the determination of the new penalty is for the lodge and not for him. It may be that had the president merely reduced the penalty to a $500 fine, petitioner could not complain of a departure from the rules so obviously in his favor, as a fine is included in the penalties provided by the constitution. ■ But the requirement of an apology is an entirely different matter. Nowhere is there a provision for such a penalty and it is completely outside the penalties prescribed. This action then constituted not only a violation of the organization's rules for appellate procedure but it brings the case under the second situation stated in the Holderby case, namely, "that it would be futile to invoke" the further appellate rules. They provide that to go further with his appeal petitioner must comply with all orders of the Executive Council. Thus to gain redress petitioner must pay a fine which the president and the Executive Council had no right to impose and to make an apology which neither had the right to require. While the fine money could be refunded if the convention were to reverse the Executive Council's decision, there is no way in which the apology could be wiped out. The effect of these requirements was to prevent petitioner from proceeding further and gave him the right to appeal to the courts for relief.

Appellants contend that the action of the Executive Council, in effect, eliminated the president's requirement of an apology. The General Secretary-Treasurer on January 30, 1951, notified petitioner: "Inasmuch as you failed to supplement your letter of November 16, the Executive Council, at its recent meeting, carefully appraised all of the facts as presented in the correspondence dealing with your case and, after due deliberation, *by unanimous action, voted to sustain the International President's decision.* Accordingly, Presi-

dent Hayes' decision of November 13, fining you $500.00, becomes the decision of the Executive Council. . . ." (Emphasis added.) On February 23d he notified petitioner that an appeal to the convention, if made, could not be "processed" "until you have carried out the decision of the Executive Council, which means you must pay the fine of $500.00 before you can appeal to the convention." On February 11, 1952, the financial secretary of the lodge notified petitioner that the lodge could not accept dues from him until he paid the $500 fine *and made a complete and appropriate apology,* sending copy to the International President. "This is in accordance with the decision" of the president "and sustained by the Executive Council . . ." It is difficult to understand how the Executive Council "voted to sustain the International President's decision" if it deleted therefrom the apology requirement. Certainly the lodge interpreted the action of the Executive Council as requiring the apology as well as the fine. At the trial counsel for appellants stated: ". . . it is true that in order to comply with the decision of the International President that the Plaintiff would have to pay $500 and that we don't dispute that at all, and *it also appears that he would have to make an apology."* (Emphasis added.) In any event, as a result of the appeal brought by petitioner, he finds himself ousted from his union because of nonpayment of dues, which he would pay but it will not receive, and denied his right of further appeal because he will not do something which the appellate bodies had no right to require him to do. It should be remembered that being ousted or expelled from a union is a matter of much greater consequence than expulsion from a fraternal organization. In the former case, in most instances it means a loss of a member's job, and therefore, his means of making a living. Especially is this so when employers of the type of labor provided by members of this organization only hire through the union hiring hall. At the very least, his no longer belonging to the union would be a serious handicap in the labor market.

The facts bring this case under the exception to the general rule of exhaustion of administrative remedy. We are therefore required to consider whether the acts of the lodge violated the constitution of either the Grand Lodge or the local lodge.

## 2. *Lodge Violations.*

There is no provision in either constitution for rescinding the action of the membership in voting on the recommendations of a trial committee.[7] Appellants support such action, however, by contending that the procedure was in accordance with Robert's Rules of Order and that the constitutions make those rules applicable. ▆ Article G, section 2 of the local lodge constitution provides: ''The Rules of Order governing parliamentary procedure shall be printed in the copies of the Constitution of the Grand Lodge, and no other rules shall apply.'' In these rules there is nothing upon the subject with which we are here concerned. Article II, section 11 of the Grand Lodge Constitution makes Robert's Rules of Order the parliamentary law of both the Grand Lodge and the local lodge, ''except in cases otherwise provided for by this Constitution.'' If there is any conflict between Robert's Rules and the provisions of either constitution the latter must necessarily prevail. (See *Harris* v. *National Union of Marine Cooks & Stewards,* 98 Cal.App.2d 733, 736 [221 P.2d 136].)

▆ The lodge constitution requires that voting on the recommendations of the trial committee be by secret ballot. It would seem to conflict with this requirement to permit a vote to rescind such action to be taken in a less formal way. Here it was taken by a standing vote. At the very least this violated the spirit of the constitution. Moreover, Robert's Rules provide (§ 10, subd. 5, p. 50, Robert's Rules of Order Revised Seventy-fifth Anniversary Edition): ''At any future session, the resolution, or other main motion, may be rescinded *in the same way if it had been adopted;* . . .'' (Emphasis added.) The action taken here violated that provision. We hold that attempting to rescind an action required to be taken by a secret vote, by a standing vote, is a violation of the constitution and of the rules and was therefore void.

▆ The action of rescission was taken in petitioner's absence. *Ellis* v. *American Federation of Labor,* 48 Cal.App. 2d 440 [120 P.2d 79], holds (pp. 443-444): ''It is settled however in this state and elsewhere that a member of an unincorporated association may not be suspended or expelled, nor a subordinate body suspended or its charter revoked, without charges, notice and a hearing, even though the rules

---

[7]Truax having appealed to the president from the action taken on July 19th, it is very doubtful if the membership under any theory could modify or rescind the action which was then on appeal.

of the association make no provision therefor.'' While petitioner had notice of the proceedings up to the action exonerating him on July 19th, the action purported to be taken on August 2d was taken without notice and in his absence. The above mentioned rule would apply to such action. Such action violated ''those rudimentary rights which will give him a reasonable opportunity to defend against the charges made. . . . The union's procedure, however, must be such as will afford the accused member substantial justice, and the requirements of a fair trial will be imposed even though the rules of the union fail to provide therefor.'' (*Cason* v. *Glass Bottle Blowers Assn.*, 37 Cal.2d 134, 143 [231 P.2d 6, 21 A.L.R.2d 1387].)

■ Moreover, the vote on the question of expulsion did not produce the required ''two thirds (2/3) vote of those voting.'' There were 29 yes votes, 14 noes and 1 blank cast, or a total of 44 votes. The casting of a blank ballot is voting. To constitute a two-thirds vote of those voting it was necessary to get 30 votes. As only 29 affirmative votes were cast the measure failed and the attempted expulsion cannot stand.[8]

### 3. *President's Interpretation.*

■ Appellants contend that the president's interpretation of the constitutions as giving him the power to impose the fine and apology, in holding the rescinding action of the lodge as proper, and in determining that the blank ballot should not be counted in determining the votes cast, is binding upon the courts. This contention is based upon the rule set forth in *DeMille* v. *American Federation of Radio Artists*, 31 Cal.2d 139, 147 [187 P.2d 769, 175 A.L.R. 382] : ''The practical and reasonable construction of the constitution and by-laws of a voluntary organization by its governing board is binding on the membership and will be recognized by the courts.'' But the construction placed upon such actions by the president in this case cannot be held to be reasonable under the circumstances. ■ ''A clearly erroneous administrative construction of a definite and unambiguous provision of the

---

[8]While the trial court found that the action of petitioner in charging Truax in the civil action with directing and ordering Nelson to assault him violated article XXV, section 1, ''falsely or maliciously attacking the character, impugning the motives or questioning the integrity of any officer of the Grand Lodge'' (Truax was such an officer) we deem it unnecessary to consider this finding for the reason that by the action of the membership on July 19th in rejecting the trial committee's finding, the matter has become academic.

constitution cannot operate to change its meaning." (*Harris* v. *National Union of Marine Cooks & Stewards, supra,* 98 Cal. App.2d 733, 737; see also *Mandracio* v. *Bartenders Union, Local 41,* 41 Cal.2d 81, 85 [256 P.2d 927]; *Riviello* v. *Journeyman Barbers etc. Union,* 109 Cal.App.2d 123, 128-129 [240 P.2d 361].)

We are not impressed by the fact that the president stated in effect that his conclusion would not have been different if he were considering Truax' appeal from the first action of the lodge rather than petitioner's appeal from its second action. It is only the latter situation with which we have to deal.

### 4. Damages: (a) Jurisdiction.

In determining the question of whether the exclusive jurisdiction to grant damages in a case of this kind lies in the Labor Relations Board, it is first necessary to determine the character of the pleadings and issues in this case. The petition alleged a breach of contract between the union and plaintiff, one of its members.[9] It took the form of a petition for writ of mandate because damages alone would not be adequate to restore to petitioner the things of value he had lost by reason of the breach. No charge of "unfair labor practices" appears in the petition. The answer to the petition denied its allegations and challenged the jurisdiction of the court, but said nothing about unfair labor practices. The evidence adduced at the trial showed that plaintiff, because of his loss of membership, was unable to obtain employment and was thereby damaged. However, this damage was not charged nor treated as the result of an unfair labor practice but as a result of the breach of contract. Thus the question of unfair labor practice was not raised nor was any finding on the subject requested of, or made by, the court.

So far as plaintiff's improper expulsion from the union is concerned, there could be no question of unfair labor practice.

The Taft-Hartley Act prescribes in part: "(b) It shall be an unfair labor practice for a labor organization or its agents —(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title: PROVIDED, *That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the*

---

[9] See *Harris* v. *National Union of Marine Cooks & Stewards, supra,* 98 Cal.App.2d at p. 736: "The constitution of the union constitutes a contract with the members . . ."

*acquisition or retention of membership therein;. . ."* (29 U.S.C.A. § 158; emphasis added.) In construing this section the courts have held that the courts have jurisdiction to restore union membership to a member improperly deprived thereof by his union. ██ As said in *Mahoney* v. *Sailors' Union of the Pacific* (1954), 45 Wn.2d 453 [275 P.2d 440], improper expulsion by the union does not constitute an "unfair labor practice" which under the act takes jurisdiction away from the courts. (See also *Real* v. *Curran,* 285 App.Div. 552 [138 N.Y.S.2d 809].)

██ So far as the award of damages is concerned, it was awarded not for an unfair labor practice, but for breach of contract and as incidental to the restoration to plaintiff of his right of membership. The contention that the Labor Relations Board has sole jurisdiction of the question of damages in a case of this kind was made and answered in *Taylor* v. *Marine Cooks & Stewards Assn.,* 117 Cal.App.2d 556, 564 [256 P.2d 595] : "Appellants argue that these disputes are solely cognizable by the National Labor Relations Board under the Taft-Hartley Act. (29 U.S.C.A. § 158 (b) 2.) The damages suffered by respondents were an incident of the wrongful act of appellant union in taking disciplinary action against them in a manner which was violative of their rights under the constitution of the union. Nowhere in the Taft-Hartley Act is the N.L.R.B. given jurisdiction or authority to review the legality of any disciplinary action taken by a union against one of its members or to order a member's reinstatement in the union or to award damages resulting from his wrongful expulsion. These powers are left in the courts of law where they have always resided. We find nothing in the Taft-Hartley Act to deprive a court of the power to do complete justice between a wrongfully disciplined member and his union by allowing such damages as he may have suffered as an incident to the judgment restoring him to the rights within the union of which he had been illegally deprived."

There are many cases holding it to be an unfair labor practice for a union in any way to cause an employer to fail to employ an expelled member (whether the expulsion be proper or improper), and that the National Labor Relations Act authorizes the Labor Relations Board to compensate the member for loss of earnings if lost through the procedures followed by the union whereby employers were caused to discriminate against such members. (*Real* v. *Curran, supra,*

138 N.Y.S.2d 809.)[10]  But in all those cases the charge was made that the acts of the union constituted unfair labor practices and such charge was an issue in each case.  As we have pointed out it was not an issue here.  In *Weber* v. *Anheuser-Busch, Inc., supra*, 348 U.S. 468, where the issue was whether the unions were guilty of unfair labor practices the court must have had this very distinction in mind for after referring to the "delicate problem of the interplay between state and federal jurisdiction touching labor relations" (p. 474) and after stating (p. 480) "the Labor Management Relations Act 'leaves much to the states, though Congress has refrained from telling us how much' " (quoting from *Garner* v. *Teamsters etc. Union*, 346 U.S. 485, 488 [74 S.Ct. 161, 98 L.Ed. 228]) it prefaced its conclusion that the state court did not have jurisdiction of the unfair labor practices charged, as follows:  ". . . *where the moving party itself alleges unfair labor practices . . .*"  (P. 481; emphasis added.)  In *United Const. Workers* v. *Laburnum Const. Corp.*, 347 U. S. 656 [74 S.Ct. 833, 98 L.Ed. 1025], the court held that the National Labor Relations Act did not give such exclusive jurisdiction to the National Labor Relations Board as to deprive a Virginia state court of jurisdiction to try a common law tort action brought by a construction company against a union even though the United States Supreme Court assumed the conduct constituted an unfair labor practice under the act.[11]

In *Real* v. *Curran, supra*, 138 N.Y.S.2d 809, where a member allegedly was illegally expelled from his union, the court held that the Labor Relations Board could only act where there was an unfair labor practice, that improperly expelling the member did not constitute such practice and hence the board had no power to restore his union membership.  Therefore it held that there was nothing in the Labor Relations Act which would affect the law which had long existed in New York that a wrongfully expelled member of a labor

---

[10]Among other cases are: *Born* v. *Laube*, 213 F.2d 407, cert. den. Oct. 18, 1954, 348 U.S. 855 [75 S.Ct. 80, 99 L.Ed. 674]; *Radio Officers* v. *National Labor Relations Board*, 347 U.S. 17 [74 S.Ct. 323, 98 L.Ed. 455]; *Weber* v. *Anheuser-Busch, Inc.*, 348 U.S. 468 [75 S.Ct. 480, 99 L.Ed. 546]; *Mahoney* v. *Sailors Union of the Pacific, supra*, 275 P.2d 440; *Sterling* v. *Local 438, etc. Assn.* (1955), 207 Md. 132 [113 A.2d 389].

[11]It is significant that there, as here, the trial court made no finding that the acts in question did constitute unfair labor practices.

union was entitled to restoration by the state courts to union membership and "in a proper case, damages for consequent loss of wages." (P. 811.) "It is, therefore, concluded that the provisions of the Labor Management Relations Act, 1947, do not exclude the State courts from their traditional jurisdiction to restore to membership a wrongfully expelled member of the union." (P. 814.)

In *International Union, etc. C.I.O. & Local 660* v. *Hinz*, 218 F.2d 664 (U. S. Ct. of Appeals, 6th Cir., 1955), the plaintiff sued the union in the state court of Michigan for damages (not for reinstatement in the union) charging that his union membership had been wrongfully terminated, and asking both compensatory and exemplary damages for loss of wages, etc. The union filed a complaint in the U. S. District Court praying for an injunction against the prosecution of said suit in the state court. In upholding the action of the District Court in dismissing this complaint, the reviewing court held: "Appellee's work did not cease as a consequence of a current labor dispute nor because of an unfair labor practice." (P. 665.) "The Board has no jurisdiction in disputes between a union and its members nor authority over the internal operation of a union." (P. 665. See also *Amalgamated Clothing Workers of America* v. *Richmond Bros. Co.*, (6 Cir.) 211 F.2d 449, and *International Union of Electrical, Radio & Machine Workers, C.I.O.* v. *Underwood Corp.*, 219 F.2d 100.)

In *Holderby* v. *International Union of Operating Engrs.*, *supra*, 45 Cal.2d 843, the plaintiff filed an action in which he sought and obtained reinstatement as a member in good standing in the union and damages resulting from his alleged unlawful exclusion therefrom. While the Supreme Court reversed the judgment on the ground of the plaintiff's failure to exhaust his administrative remedy, it is interesting to note that the court nowhere intimates that it did not have jurisdiction of the subject matter of the action. Likewise in *Weber* v. *Marine Cooks & Stewards Assn.*, 123 Cal.App.2d 328 [266 P.2d 801], the plaintiff sued for reinstatement in his union after an alleged wrongful expulsion and for damages in the loss of wages and for mental suffering (just as plaintiff did here). The trial court granted a motion for nonsuit on the ground of laches alone. The reviewing court reversed the judgment and sent the case back for trial. It evidently had no doubt concerning its jurisdiction.

The language of William J. Isaacson in his article, "Labor Relations Law: Federal versus State Jurisdiction," appearing

in the May, 1956, American Bar Association Journal (vol. 42, No. 5, p. 415) is applicable here. After calling attention to the fact that there is a conflict between the courts, both state and federal, which have considered the question here involved, and that the United States Supreme Court has not passed upon it, and then referring to *Real* v. *Curran, supra,* 138 N.Y.S.2d 809, and *Mahoney* v. *Sailors' Union of the Pacific, supra,* 275 P.2d 440, the article then states (p. 483) : "Although even these state court decisions may lead to possible conflict between the federal labor board and state courts they do not present potentialities of conflicts in kind or degree which require a hands off directive to the states. A state court decision requiring restoration of membership requires consideration of and judgment upon matters wholly outside the scope of the National Labor Relations Board's determination with reference to 'employer discrimination after union ouster from membership. The state court proceedings deal with arbitrariness and misconduct vis-a-vis the individual union members and the union; the Board proceeding, looking principally to the nexus between union action and employer discrimination, examines the ouster from membership in entirely different terms."

*Damages: (b) Award.*

Appellants contend that there is no evidence to support the award of $6,800 damages for loss of wages.[12] Petitioner testified that his earnings were nearly always $100 per week at least, and frequently between that figure and $200. At the time of his expulsion from the union he was employed as a marine machinist by the General Electric Company. About four days thereafter he was injured on the job, incapacitated approximately three weeks. The ordinary practice was for employers to telephone the union hall for men, and the union members would be dispatched to the work. Thereafter he applied to the union for an assignment to a job as he had done prior thereto. He was refused dispatch by the union dispatcher. He testified he sought work directly from the employers but without success. Although there was some testimony to the effect that the union might dispatch a non-member to a job if he had a letter from the employer requesting him, the dispatcher testified that plaintiff would not have

---

[12]They apparently do not claim the evidence is insufficient to support the award of $2,500 for mental distress.

been dispatched even if he had such letter. There was ample evidence to support the award.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied July 12, 1956, and appellants' petition for a hearing by the Supreme Court was denied August 8, 1956. Carter, J., was of the opinion that the petition should be granted.