## VICTOR O. BRUMMEL ET AL. *vs.* CLIFTON REALTY COMPANY, INC.

*Specific Performance—Building Contract—Parol Agreement— Merger in Writing.*

While the supposed difficulty of supervising the work to be done under a building contract will as a general rule prevent a court of equity from specifically enforcing the contract, there is no reason for extending the application of the general rule to cases not clearly within its scope. p. 64

A court of equity has power to compel the specific performance of a contract for the sale of leasehold property improved by an unfinished house, which the vendor in a written and sealed contract agreed to complete, where under the circumstances of the case the vendor has no adequate remedy at law, the vendors having executed a conveyance to the purchasers, but failed to complete the house as agreed, and the work remaining to be done being clearly defined. pp. 64, 65

In view of Code, art. 6, sec. 231, providing that specific performance shall not be refused on the mere ground that there is an adequate remedy in damages, unless the party resisting performance shall show that he has property from which damages may be made or shall give bond, the fact that the pleadings fail to show that the complainant has no remedy at law is not fatal. p. 65

A parol agreement, by a vendor of land, to do certain work upon a house on the land, in addition to the work specified in the written contract of sale, will, in the absence of any sufficient allegation of fraud, be deemed to be merged in the written contract, under the rule excluding evidence of a prior or contemporaneous oral agreement to vary, add to, take from, or contradict a written agreement, and cannot be regarded as a sufficient basis for an application to a court of equity to compel specific performance. p. 66

*Decided June 7th, 1924.*

Appeal from the Circuit Court of Baltimore City (DUFFY, J.).

Bill by Victor O. Brummel and Edna M. Brummel, his wife, against the Clifton Realty Company. From a decree for defendant, plaintiffs appeal. Reversed.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, DIGGES, JJ.

*Peter Peck*, for the appellants.

*Thomas Charles Williams,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The appeal in this case was taken from a decree of the Circuit Court of Baltimore City, sustaining a demurrer to an amended bill of complaint and dismissing the bill. It presents two points: (1) Whether a court of equity has the power to compel the specific performance of a contract for the sale of leasehold property improved by an unfinished house which the vendor in a written and sealed contract agreed to complete, where under the circumstances of the case the vendee has no adequate remedy at law, and (2) whether the allegations of the bill are sufficient to bring this case within that rule. The question first stated grows out of the following facts alleged in the bill and conceded by the demurrer:

On March 4th, 1921, the Clifton Realty Company, Inc., sold to Victor O. Brummel and Edna M. Brummel, his wife, a leasehold property described as 4201 Park Heights Avenue, in Baltimore City, for $7,500, and on the same day the parties to that transaction executed a contract under seal which, among other provisions, contained these, which may be regarded as pertinent to the question before us. It provided first that the purchase price should be paid in this manner: $500 cash upon the execution of the agreement, $500 cash upon the execution of a deed, and to quote from

the contract, "and the execution of a building association mortgage for $5,000.00 and a second mortgage for two years at 6% for $1,500.00. The vendee reserves the right to make the cash payment of $1,000.00 and the second mortgage of $1,000.00. The vendor is to secure the building association loan of $5,000.00 and the vendee agrees to pay the usual fees for securing the same and examining the title." It also provided that the property sold should be "completed as stated on the reverse side of this contract," and the terms stated on the reverse side of the contract were these:

"All necessary plumbing work, which shall include connecting up the gas range in the kitchen and installing the gas range in the kitchen, to run a gas pipe to the second floor, leaving an outlet for gas connection. The vendor guarantees that the plumbing shall be in accordance with the regulations of the Health Department of Baltimore City. 2. All woodwork to be painted throughout the house. 3. Heating plant installed, using the Bibb furnace and guaranteeing the same to heat the house properly. 4. All necessary electric fixtures to be installed, with the privilege on the part of the vendee to select fixtures of about the same character as used in 4207 Park Heights Avenue. 5. All rooms to be papered except kitchen and bathroom, which can be painted as the purchaser desires, paper and paint to be selected by purchaser. 6. Lead from porch roof to take care of water on roof. 7. Front lawn to be sodded when weather permits. 8. Cut extra door between two rear rooms on second floor, using present swinging door on first floor, leaving no door between kitchen and dining room, but vendor will hang door that vendee supplies. No grill on second floor. 9. Vendor to connect up sink on second floor on the same line with sink on first floor; vendee to supply sink and spigots and other necessary parts of sink, vendor to supply labor and pipe. 10. Side of house where hole is to be filled in. 11. Front steps to be straightened up."

On April 4th, 1921, the vendees paid to the vendor $1,400 in cash, took a deed for the property, and executed one mortgage to the Bloomingdale Building & Savings Association, Inc., for $5,000, and a second mortgage for $1,100 to the vendor. At the time they took title to the property, while it was still unfinished, it was in course of completion, but as soon as the title passed the work of completing it ceased, and the vendor failed in the following particulars to carry out and perform his agreement to complete it. That is, to quote from the bill:

> "The defendant has failed to paint the bath tub and the woodwork under the sink in the kitchen on the first floor of said premises; secondly, the heating plant installed by the defendant, to wit, the Bibb furnace, does not heat the house properly; thirdly, the defendant has failed to complete the hall lamp on the third floor and the light in the dining room of said premises; fourthly, the defendant has failed to have the front steps of said premises straightened up."

The vendor, both before and after the execution of the written contract, made certain oral statements and promises not contained in the written contract, which are set out in the bill in these words: "that the cellar was a dry cellar; that the defendant would have the cellar of said premises cemented and the windows thereof completed and a front doorbell installed and certain tile work in the bath room completed and that the roof of said house was sound and weatherproof and was guaranteed." These promises were omitted from the written contract upon the vendor's request but upon assurance that it would perform them, and, to quote again from the bill "said premises constituted part of the moving cause and of the inducement for their entering into the contract of sale and making final settlement therefor, and for signing the mortgage interest notes under the second mortgage to the defendant; and furthermore, your orators aver that they would not and did not sign the mortgage interest notes in respect to the second mortgage made to the

defendant and withheld their signature therefrom and the delivery of said mortgage interest notes to the defendant until the defendant promised to carry out the aforesaid promises recited in paragraph 6 hereof." Notwithstanding these promises the vendor "failed to complete the roof, and through its failure so to do the wall paper in the kitchen on the second floor of said premises became mildewed and the window blinds badly damaged, and the wall paper in the hall leading from the second floor to the third floor and the wall paper in the front room on the third floor has become badly damaged therefrom; * * * failed to complete the windows of said premises, the cost of completion whereof would involve an expenditure of several hundred of dollars" and "has failed to have the said front door bell installed and the said tile work in the bath room completed" and "has failed to have the cellar cemented, and through its failure so to do, water gathers therein and renders the premises damp and unhealthful."

The vendors put all the money they had in the property, and their joint earnings are not sufficient to complete the house and keep up the necessary payments on account of the mortgages and expenses on it and, to quote again from the bill: "If your orators completed the house at their own expense they would be unable to meet the payments as they fall due on said mortgages and be subject to foreclosure proceedings which would wipe out the savings of a life time and deprive them of their home which they have acquired through the practice of frugality and self-denial; and furthermore, your orators would also be subject to personal judgments or decrees for the reason that the said property is not worth the purchase price through the failure of consideration to a considerable extent, through the default of the defendant, as heretofore alleged in this amended bill of complaint."

Upon those facts they asked the court to decree that "said agreement may be specifically enforced, and that said defendant may be decreed to paint the woodwork under the sink in the kitchen on the first floor, to paint the bath tub, to install

a proper heating plant, to complete the hall lamp on the third floor, to complete the light in the dining room, and to straighten the front steps."

The question first stated is not free from difficulty. Generally speaking, where a valid contract has been broken, the rule which should guide the acts of a court of equity to which the injured party has applied for relief is very clearly stated in *Williston, Contracts, par.* 1418, where that learned and careful author says: "The general rule defining the instances where specific performance will be granted is—where damages are an inadequate remedy and the nature of the contract is such that specific performance of it will not involve too great practical difficulties, equity will grant a decree of specific performance. The fact that there is a remedy at law does not preclude the equitable remedy." And in *Dailey* v. *New York,* 170 N. Y. App. Div. 267, cited in support of the text, it is said: "In order to deny one the relief which a court of equity can give, it is not in all cases sufficient that there be a remedy at law. The remedy must be plain and adequate, and as certain, prompt, complete and efficient to attain the ends of justice and its prompt administration as the remedy in equity."

In *Pomeroy, Spec. Perf.,* sec. 7, after referring to the statement of Sir John Leach, who, in *Adderly* v. *Dixon,* 1 Sim. & St. 610, said: "Courts of equity decree the specific performance of contracts, not upon any distinction between realty and personalty, but because damages at law may not, *in the particular case,* afford a complete remedy," as accurate but not exhaustive, the author thus states the rule: "The cases of insufficiency of damages, which admit a recourse to equity for a specific enforcement of the contract, are reducible to two distinct classes—or, in other words, the insufficiency of damages as a remedy may be referred to two distinct grounds connected with the contract. 1. The first is where the subject-matter of the contract is of such a special nature, or of such a peculiar value, that the damages, when ascertained according to legal rules, would not be a just and reasonable substitute for

or representation of that subject-matter in the hands of the party who is entitled to its benefit—or, in brief, where the damages are *inadequate.* 2. The second is where from some special and practical features or incidents of the contract inhering either in its subject-matter, in its terms, or in the relations of the parties, it is impossible to arrive at a legal measure of damages at all, or at least with any sufficient degree of certainty, so that no real compensation can be obtained by means of an action at law—or, in brief, where damages are *impracticable.* All the particular instances in which a specific performance is decreed may be referred to one or the other of these two causes, and it will not unfrequently happen that both are involved in the facts of one and the same case."

These statements of the rule were not used in connection with building or construction contracts, and whether there is necessarily anything in the nature of a contract such as that involved in this case presenting administrative difficulties so serious as to make its specific enforcement in a court of equity impracticable is a question upon which there is much conflict and confusion in the decisions both in this country and in England. The fact that such courts, in supervising the administration of receiverships and the management of estates, are constantly engaged in directing work of the same general character as that incident to the relief sought in this case, might indicate that there is nothing inherent in the nature of that work which makes it so difficult or so impracticable for a court of equity to supervise and direct it that it must refuse the relief prayed. For while the general rule is that courts of equity will not usually enforce contracts for the construction or repair of buildings, yet, as stated in *Pomeroy, Spec. Perf.,* sec. 23, "there are certain exceptions; and contracts for building or for the construction of works and the like, falling within them, may be specifically enforced. 1. It has been said that if an agreement for erecting a building is in its nature defined, there is no difficulty in entertaining a suit for its specific performance. (2) But a contract to build a house of a certain value merely does not come within this descrip-

tion of an agreement sufficiently defined, and will not be enforced. 2. Whether or not the opinion of Lord Rosslyn is to be regarded as a correct statement of the law, it is settled by the recent English decisions, that where the defendant has contracted to construct some work which is defined on his own land, and where the plaintiff has a material interest in the execution thereof, which is not susceptible of adequate compensation in damages, a specific performance of the undertaking will be compelled. 3. Where the defendant has undertaken to construct certain works upon land acquired by conveyance from the plaintiff, so that the plaintiff, having parted with his land, cannot erect the stipulated structures thereon at his own cost, and thus ascertain the amount which he should be entitled to recover from defendant as damages for the breach of the contract, a court of equity will, if possible, decree a specific performance by the defendant of his agreement. The relation of the parties and the situation of the subject-matter would render the damages, in such a case, almost wholly conjectural. 4. Finally, where there has been a part performance of such a contract, so that the defendant has received and is enjoying the benefits of it *in specie,* the court may compel its specific execution, when, without such part performance, it might not have interfered, but left the plaintiff to his legal remedy." A number of cases illustrating the application of the principles involved in those exceptions, collected in the notes to the paragraph last cited, indicate that the difficulties in the way of granting such relief anticipated by the courts in the earlier cases were more conjectural than real. Courts have, it is true, again and again said that specific performance of building, repair or construction contracts cannot be enforced in equity because of the insurmountable difficulty of supervising the work done under such a contract, and that view is very strongly stated in *Beck* v. *Allison,* 56 N. Y. 366, which rests at last upon the authority of certain English cases cited in it. But in *Wolverhampton* v. *Emmons,* (1901) 1 Q. B. 515, in the English Court of Appeals, a somewhat different view was expressed, and, in

referring to the apparent absence of any fixed principle controlling courts in dealing with such cases, Collins, L. J.,
said in that case: "I must confess that I cannot altogether
understand the principle upon which courts of equity have
acted in sometimes granting orders for specific performance
in these cases, and sometimes not. I think that possibly the
explanation is that the courts have not uniformly adhered to
one principle in such cases. It looks to me as if the views of
the courts of equity have gone through a process of development with regard to the subject. In early times they seem
to have granted decrees for specific performance in such cases.
Then came a period in which they would not grant such decrees on the ground that the court could not undertake to supervise the performance of the contract. Later on again they
seem to have attached less importance to this consideration,
and returned to some extent to the more ancient practice,
holding that they could order specific performance in certain
cases in which the works were specified by the contract in a
sufficiently definite manner." But, as already stated, while
the supposed difficulty of supervising the work to be done under a building contract as a general rule will prevent a court
of equity from specifically enforcing such a contract, the
same consideration will not, as has been pointed out, prevent
them from granting such relief in certain classes of cases
which are excepted from that rule. And as this case clearly
falls within the exception, it becomes unnecessary to refer
further to the general rule than to say that because of the
conflict and confusion in the cases applying it there is no reason for extending its application to cases not clearly within
its scope. In *Wolverhampton* v. *Emmons, supra,* ROMER,
L. J., assumed that to constitute an exception from that rule
three things must concur: (1) That the work to be done
under the contract must be defined; (2) that the plaintiff
must have a substantial interest in its execution; (3) that the
defendant must have obtained under the contract possession
of the land on which the work is to be done, but in *Ward* v.
*Newbold,* 115 Md. 696, this Court, citing *Beck* v. *Allison,*

*supra,* treated any one of those three elements as sufficient to constitute an exception to the general rule, and in that connection it said: "The general rule is certainly well settled that courts will not specifically enforce contracts to build or repair, although some exceptions have been made to this rule. *Story's Equity Jurisprudence,* section 726; *Fry on Spec. Per.,* section 98; *Pomeroy on Spec. Per.,* 2nd Ed., section 23; 36th *Cyc.,* page 581. In *Beck* v. *Allison,* 56 N. Y. 366, these exceptions are thus enumerated: '1st. Where the work to be done is defined; 2nd, where the plaintiff has a substantial interest in its execution which cannot be adequately compensated for by damages, and 3rd, where the defendant has by the contract obtained for the plaintiff possession of the land upon which the work is to be done.'" And in *Williams* v. *Lowe,* 79 N. J. Eq. 175, the Court of Errors and Appeals of New Jersey, dealing with a contract to convey an unfinished house, said: "The objection that the decree as amended is one to enforce a construction contract cannot avail the appellant, first, because the agreement is not a construction contract, but a contract to convey a house the completion of which was an incident and not the object of such contract; second, because the rule invoked while it justifies the court in refusing to do what it cannot be required to do does not prevent it from so doing as incidental to other relief in exceptional cases; and, third, because the appellant cannot lay as a ground for reversal a feature of the decree made at his own suggestion." From an examination of these and other cases, this at least seems to be clear that in this State a court of equity may compel the vendee to specifically perform such a contract as that involved in this case, where the work remaining to be done under it is clearly defined, and where the complainant had no adequate remedy at law. It is also clear that the work to be done under the written contract filed in this case is sufficiently defined. But while that is true, it is equally true that there is no allegation in the pleadings to show that the complainant has no adequate remedy at law,

but in view of section 231, article 16, C. P. G. L. of Maryland, as construed in *Neal* v. *Parker,* 98 Md. 269, that cannot be regarded as a fatal omission.

In respect to the parol agreement to do certain work on the house in addition to that specified in the contract of sale, in the absence of any sufficient allegation of fraud, under the rule excluding evidence offered to show a prior or contemporaneous oral agreement to vary, add to, take from or contradict a written instrument, that agreement will be deemed to have been merged in the written contract, and cannot be regarded as a sufficient basis for an application to a court of equity for relief of the character sought in this case.

For the reasons stated the decree appealed from will be reversed and the cause remanded for further proceedings.

> *Decree reversed and cause remanded for further proceedings in accordance with this opinion, with costs to the appellants.*