WILLIAM H. AUSTRAW ET UX. *v.* MAE MARTIN
DIETZ

[No. 15, October Term, 1945.]

*Decided November 9, 1945.*

The cause was sumbitted to DELAPLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*George M. Berry* on the brief for the appellants.

*Walter R. Haile* and *Elmer R. Haile* on the brief for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

William H. Austraw and his wife allege in their bill of complaint: (1) That on November 2, 1929, they acquired title to certain real estate at Twin River Beach by a second mortgage from Mary Gliesman and her husband to secure the sum of $1,900; (2) that on November 19, 1930, John F. Oyeman, attorney named in the mortgage for purpose of foreclosure, instituted foreclosure proceedings, and he sold the mortgaged property subject to the first mortgage; (3) that on March 2, 1936, after the auditor's report showed that the proceeds of sale were not sufficient to pay the mortgage debt, Oyeman filed a petition for a decree *in personam*, whereupon the court directed the clerk to issue a subpoena to the mortgagors to answer the petition and show cause why the decree should not be entered; and on April 22, 1936, after the sheriff had summoned Mary Gliesman and she failed to answer, and it appeared that her husband was dead, the court entered a decree in favor of Oyeman, attorney named in mortgage, for $1,962.45; (4) that Mary Gliesman had abandoned the use of her real name without legal right and had been using the name of Mae Martin for the purpose of fraudulently evading her liability under the mortgage; and that she had married John H. Dietz and subsequently acquired real estate under the name of Mae Martin; and (5) that Oyeman had died and that they are the proper holders of the decree. Complainants pray that the decree be entered to their own use, and against Mae Martin and Mae Martin Dietz. The chancellor took the view that the court had acted without authority in entering the decree in favor of the attorney named in the mortgage. From his decree sustaining defendant's demurrer and dismissing the bill, complainants bring this appeal.

In the early days of the State the court of chancery in a foreclosure proceeding decreed that, unless the mortgage debt was paid by a certain day named in the decree the equity of redemption would be closed and the mortgaged property would become the absolute property

of the mortgagee. Usually this form of strict fore-
closure resulted in great hardship to the mortgagor. In
addition, it was a tedious procedure and made mortgages
unattractive to investors. Chancellor Kent said that,
even if a sale were decreed in a foreclosure suit, a court
of equity had no inherent power to enter a deficiency
decree against the mortgagor, because such a suit is an
action *in rem* and not *in personam*. *Dunkley v. Van
Buren*, 3 Johns. Ch. 330; *Wilhelm v. Lee*, 2 Md. Ch. 322;
*Rasst v. Morris*, 133 Md. 187, 104 A. 412. Hence, if a
mortgagee desired to recover the balance due on the debt,
he was obliged to institute a separate suit in a court
of law. *Noonan v. Lee*, 2 Black 499, 67 U. S. 499, 17 L.
Ed. 278; *Orchard v. Hughes*, 1 Wall. 73, 68 U. S. 73, 17
L. Ed. 560. It soon became apparent that there was no
valid reason why the case of a mortgage foreclosure
should be an exception to the general rule that where
a court of equity claims jurisdiction of an action, it will
retain it and administer full and complete relief, both
equitable and legal, so far as it pertains to the same
transaction or the same subject matter. The purpose
of this useful rule was to relieve parties from the vexa-
tion and expense of two suits, one in equity and the other
in a court of law, when the whole controversy could be
adjusted in one suit. In a foreclosure suit the chancellor
must necessarily retain jurisdiction of the cause until
after the sale and report of the auditor, and necessarily
must determine the amount of the indebtedness, so that,
if there is a deficiency, a determination of the amount
becomes a mere matter of subtraction. So there was
no logical reason why the parties should be put to fur-
ther delay and expense in relitigating the same issue,
when the chancellor, under a rule so long and generally
accepted, could promptly do complete justice between
the parties. *Kirsner v. Cohen*, 171 Md. 687, 190 A. 520;
*Frank v. Davis*, 135 N. Y. 275, 31 N. E. 1100; *Young v.
Vail*, 29 N. M. 324, 222 P. 912, 34 A. L. R. 980, 1002.

In 1785 the Maryland Legislature undertook to remedy
the defects of the law by authorizing the court of chan-

cery to order the sale of the mortgaged property for the satisfaction of the debt and, if the proceeds of sale did not satisfy the debt, to enter a decree against the mortgagor, or his heirs or personal representatives, for the amount of the deficiency. The statute applied only to actual loans of money "by any foreigner to any citizen of this State." It was intended to encourage nonresident capitalists to invest their money in Maryland. Acts of 1785, Ch. 72; *Boteler v. Brookes,* 7 Gill & J. 143, 151. The statute was later broadened so as to apply to any suit to foreclose. Acts of 1875, Ch. 327. The present statute regulating formal foreclosure provides that if the net proceeds of sale in any foreclosure suit shall not suffice to satisfy the mortgage debt and accrued interest, the court "may, upon the motion of the plaintiff, * * * enter a decree *in personam* against the mortgagor, or other party to the suit, who is liable for the payment thereof; provided, the mortgagee would be entitled to maintain an action at law upon the covenants contained in said mortgage for said residue of the said mortgage debt * * *." Acts of 1939, Ch. 507, Code, 1939, Art. 16, Sec. 241.

In order to foreclose under the statute, however, it was necessary to file a formal bill of complaint to give the mortgagor an opportunity to show cause why the foreclosure should not be decreed, and in the event of the mortgagee's death it was necessary to make both his heirs and his personal representatives parties to the suit. *Worthington v. Lee,* 2 Bland 678, 684. This procedure was cumbersome and unsatisfactory, and it became the practice to insert in mortgages a provision conferring upon the mortgagee or some person named therein the power to sell the mortgaged property upon default without obtaining previous authority from the court. While there may still be formal foreclosure in a proper case, that procedure has been generally abandoned in favor of the simpler and more convenient remedy. *Hanover Fire Insurance Co. v. Brown,* 77 Md. 64, 25 A. 989, 27 A. 314; *Hogan v. McMahon,* 115 Md. 195, 204, 80 A. 695;

250

*Frank, Title to Real and Leasehold Estates,* 233-237. The statute regulating the procedure now in use provides that if the proceeds of the sale of the mortgaged property shall not suffice to pay the mortgage debt and accrued interest, the court "may, upon the motion of the plaintiff, the mortgagee or his legal or equitable assignee, * * * after due notice by summons or otherwise as the court may direct, enter a decree *in personam* against the mortgagor or other party to the suit or proceeding who is liable for the payment thereof for the amount of such deficiency; provided the mortgagee or his legal or equitable assignee would be entitled to maintain an action at law upon the covenants contained in the mortgage for said residue of said mortgage debt * * *." Acts of 1892, Ch. 111, Acts of 1939, Ch. 507, Code, 1939, Art. 66, Sec. 25.

The chancellor, in declaring the court's deficiency decree null and void, said that the statute authorizes a deficiency decree only when "the mortgagee or his legal or equitable assignee would be entitled to maintain an action at law upon the covenants contained in the mortgage," and that an attorney named in the mortgage is not entitled to maintain an action at law. But the statute does not say that the plaintiff must be entitled to maintain an action at law. When the Legislature provided that the right to a deficiency decree should exist only where the mortgagee could have maintained an action at law upon the covenants contained in the mortgage, it meant that the right should exist only against the proper parties to the proceeding and such parties as were bound by the covenants and could have been sued at law thereon. Hence, as stated in *Kushnick v. Lake Drive Building & Loan Ass'n,* 153 Md. 638, 645, 139 A. 446, the right would not exist where the foreclosure suit was against an heir of the mortgagor, or was brought to foreclose a mortgage not under seal, because in such a case the person sought to be charged would not be liable on covenants in the mortgage and could not be sued thereon. We hold that, under the express language

of the statute, a person who is designated as attorney for the purpose of foreclosure and is a proper plaintiff in a foreclosure proceeding is entitled to apply for and obtain a decree *in personam*. In the foreclosure suit now under consideration, Oyeman was the plaintiff and thus was a proper person to make the motion for decree *in personam* and to have it entered in his favor. To deny such plaintiff the right to seek the deficiency decree in his own name would render the words "the plaintiff" in the statute meaningless and nugatory. Moreover, an attorney named in a mortgage to foreclose in event of default has the same functions as a person who is subsequently named as assignee of a mortgage for the purpose of foreclosure after default has occurred, and there is no logical reason why the Legislature would desire to authorize an assignee for purpose of foreclosure to file a motion for a deficiency decree, but deny such right to an attorney selected by the parties in advance for the purpose of foreclosure. This construction is strengthened by the fact that the similar statute regulating the strict form of foreclosure makes the same distinction between the plaintiff who makes the motion and the mortgagee who is entitled to maintain the action at law. That statute provides that the court "may, upon the motion of the plaintiff, * * * enter a decree *in personam* * * *; provided, the mortgagee would be entitled to maintain an action at law upon the covenants * * *." Code, 1939, Art. 16, Sec. 241.

It is true that the statute authorizing the entry of deficiency decrees should be strictly construed because it is in derogation of the common law. *Gross v. Ben. Franklin Building & Loan Ass'n*, 157 Md. 401, 146 A. 229. In scanning a foreclosure proceeding the court should exact strict compliance with all the requirements of the statute. In fact, when the Court of Appeals had under consideration the Act of 1876, Judge Alvey said that, although the statute did not expressly require notice to the mortgagor upon motion for a decree *in personam*, good practice and the principles of justice required that

an order should be served on the defendant to show cause why the decree should not be entered, and the court should hear and determine any defense that could be made in an action at law upon the covenants in the mortgage. *McDonald v. Workingmen's Building Ass'n of Cumberland,* 60 Md. 589, 592. However, the statute under consideration is remedial, and the court should construe it so that it may effectually accomplish the object for which it was designed whenever possible. *Judson v. Smith,* 104 Mo. 61, 15 S. W. 956; *Erkman v. Carnes,* 101 Tenn. 136, 45 S. W. 1067; *Black, Interpretation of Laws,* 2d Ed., Secs 139, 140.

In this case the bill of complaint alleges that, after the auditor's report showed a deficiency, the court passed an order directing the issuance of a subpoena, and the order was served upon the surviving mortgagor but she failed to answer. The chancellor remarked that there was no question that the mortgagor owed the full amount of the deficiency, and he acknowledged that his decision to nullify the decree would cause manifest injustice by depriving the mortgagees of the right to collect a legitimate indebtedness. Even though the sale was made in 1930 and ratified in 1931, the mortgagees would not necessarily be barred from relief in equity on the ground of laches. In a case in New York, where there was no statutory time for the filing of a deficiency decree, the court held that it could be filed even after more than ten years had elapsed since the time of the report of sale. *Brown v. Faile,* 112 App. Div. 302, 98 N. Y. S. 420; 42 C. J., *Mortgages,* Sec. 1974. However, the Maryland statute expressly provides that the motion for decree *in personam* shall be made within three years after final ratification of the auditor's account. Code, 1939, Art. 66, Sec. 25.

We will therefore reverse the decree appealed from, and remand the cause for further proceedings, with instruction to the court below that the personal representa-

tive of Oyeman, deceased attorney, be made a party defendant and be given an opportunity to assert any interest in the decree.

*Decree reversed and cause remanded for further proceedings, with costs.*