## BROWN *v.* FRALEY

[No. 1, September Term, 1962.]

(Two Appeals In One Record)

*Decided October 11, 1962.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT,
JJ.

*R. Edwin Brown* and *J. Alex Johnson, Jr.,* for appellant.

*John E. Oxley* and *William M. Canby,* with whom was *James
R. Miller, Sr.,* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

This is a consolidated appeal of two cases. One, an equity
proceeding involving the foreclosure of a chattel mortgage, was
previously before this Court in *Brown v. Fraley,* 222 Md. 480,
161 A. 2d 128 (1960). The other is an action at law for dam-
ages arising out of an alleged breach of a covenant not to en-
gage in a competitive business for a specified period. Both cases
involve the same parties.

In May of 1957, Brake R. Fraley (seller-mortgagee) agreed
to sell to Richard P. Brown (buyer-mortgagor) a trucking busi-
ness previously conducted by the seller. The agreement and
contract between the parties provided for the sale of twelve
pieces of equipment used in the business and the good will of
the enterprise. The seller further covenanted not to engage in
or aid and assist anyone else in the trucking business within the
limits of Montgomery County (other than that which the seller

could do with a small stake-body truck and a pick-up truck) for a period of five years. The remainder of the purchase price of $13,000 (after the payment of the initial deposits aggregating $10,000), payable in monthly installments of $450, was, in accordance with the terms of the agreement, secured by the execution of a bill of sale on all of the equipment. It was also agreed that a piece of equipment should be released from the lien for every $1500 paid on account of the principal mortgage indebtedness. It was further covenanted and agreed that the mortgagor should "punctually make the payments aforesaid."

The mortgagor made the installment payments through February of 1959. Shortly thereafter, when he learned that a minor son of the seller was conducting a trucking operation from the home of his father and mother in competition with the buyer, he protested and warned the seller-mortgagee to correct the situation or he would stop making payments on the mortgage, which he subsequently did. When the demands of the mortgagee that the mortgagor resume payments on the mortgage were ignored, the mortgagee filed a bill in equity to foreclose the bill of sale as if it were a chattel mortgage. The buyer-mortgagor countered by filing an action at law against the seller-mortgagee for damages based on alleged breaches of the covenant not to compete. The buyer-mortgagor, his demurrer to the bill to foreclose having been overruled, answered the bill, and, on the day the equity proceeding came on for a hearing, filed a cross-claim, in which, among other relief, he sought a decree declaring that the seller-mortgagee had "wilfully and knowingly breached his agreement and contract * * * which will be determinative of the question of liability" in the action at law, and prayed for a judgment in personam for damages, and for an injunction restraining the seller from engaging in any way in the trucking business in competition with the buyer during the remainder of the five-year period.

At the equity hearing, the chancellor, although stating that the buyer-mortgagor might be entitled to his day in court on the law side, nevertheless warned him he might have to overcome the question of *res judicata* in that action. At this point the buyer-mortgagor, with the permission of the chancellor, abandoned the prayer in the cross-bill for a determination of

the amount of damages sought for the alleged breach of covenant not to compete, but insisted upon having the question of liability for such damages determined in the equity proceeding. Thereafter, during the taking of testimony on this phase of the case, the buyer was asked on cross-examination to specify the complaints on which he based the alleged breaches of the covenant not to compete, and, in response, he enumerated in substance the same allegations he had made in the action at law.

The chancellor, having concluded that the "agreement and contract" was divisible, found that a violation of the covenant not to compete would not preclude the foreclosure of the bill of sale, which he further found was in substance a chattel mortgage, and appointed trustees to sell the mortgaged property to satisfy the mortgage debt and interest. He further found that only the monthly payments (but no part of the deposit payments) should be credited and applied to the lien secured by the mortgage, but held that the mortgagor was not entitled to have any of the equipment released for the more than $7,500 by which the principal mortgage indebtedness had been reduced. The buyer-mortgagor appealed, claiming principally that the bill of sale was not a chattel mortgage and that some of the pieces of equipment should have been released from the lien.

With respect to the cross-bill, the chancellor deemed it unnecessary to issue an injunction inasmuch as the seller, during the course of the four-day hearing, had ordered his son out of the parental home as the chancellor had suggested he must do (if the son continued in the trucking business) before the court would grant any of the relief the seller sought, and, having found, among other things, that the evidence did not establish a breach of the covenant not to engage in or aid and assist another to operate a trucking business, the chancellor dismissed the cross-bill, but there was no appeal from these findings.

On the first appeal, this Court affirmed the holdings of the lower court from which an appeal was taken in all respects except as to the release of some of the mortgaged property, and remanded the case for a modification of the decree to permit foreclosure on only seven pieces of equipment. Upon remand,

a foreclosure sale of the remaining equipment was had as decreed, but the proceeds of sale being insufficient to pay the mortgage debt, interest and costs, the mortgagee moved for a deficiency decree. The motion was granted, a decree in personam for $5,913.24 was entered in favor of the mortgagee, and the mortgagor appealed.

The other appeal is from the entry of a judgment for costs in the action at law for damages. Subsequent to the entry of the decree in personam in the equity proceeding, the seller, alleging that the decree was *res judicata* to the law action, moved for a summary judgment against the buyer. The motion was granted and judgment was entered.

On this consolidated appeal, the buyer-mortgagor or appellant—treating the second and third questions he presented as one in his brief and oral argument—has posed three contentions: (i) that the chancellor was without authority to enter a deficiency decree against him when the sale of the unreleased equipment was not a sale of the "whole mortgaged property"; (ii) that the bill of sale (judicially determined to be a chattel mortgage) and the covenant to pay the mortgage debt and interest set forth in the agreement and contract may not be read together for the purpose of supplying the covenant absent from the chattel mortgage to the end that an action at law may be maintained on the covenant; (iii) that the dismissal of the cross-bill filed in the equity proceeding was not *res judicata* to the action at law for damages for breach of covenant.

### (i)

The first point raised by the appellant is obviously without merit, for it is clear that the term "whole mortgaged property" as used in Maryland Rule W75 b 1 means only that property which has not been released from the lien of the mortgage. The rule does state that "[i]f, after a sale of the *whole mortgaged property* [italics supplied], the net proceeds of the sale * * * are insufficient to pay the mortgage debt and accrued interest, * * * a motion for a deficiency decree may be made," but that does not mean that if some of the mortgaged property has been released, the mortgagee is barred from obtaining a decree in personam against the mortgagor. On the

contrary, we think the purpose of the rule is to require a sale of *all* ("all" in the sense used in the rule being synonymous with or the equivalent of "whole") the mortgaged property that remains within reach of the mortgagee at the time of sale as a condition precedent to the right to move for a deficiency decree.

(ii)

The contention that the covenant in the agreement and contract to pay the mortgage debt and interest may not be read into the chattel mortgage is likewise without substantial merit. For as was pointed out in the prior appeal—*Brown v. Fraley, supra,* at p. 489 (of 222 Md.)—"[t]he contract of sale and the bill of sale together constituted one agreement and should be construed together."

Furthermore, the law with respect to the right of a mortgagee to move for a deficiency decree is clear and definite. It has long been held that if a sale of mortgaged property does not produce enough to pay the mortgage debt, interest and costs, the mortgagee may proceed as any other creditor against the mortgagor for the balance of the indebtedness unless some element of estoppel is present. *Mizen v. Thomas,* 156 Md. 313, 144 Atl. 479 (1929). See also Rule W75 b 1. However, a deficiency decree cannot be rendered against a debtor unless the party seeking the decree has a right to maintain an action at law on a covenant contained in the mortgage. See *Boyd v. Goldstein,* 223 Md. 255, 164 A. 2d 336 (1960) ; *Austraw v. Dietz,* 185 Md. 245, 44 A. 2d 437 (1945). See also Rule W75 b 2. Under the law of this State, if a mortgage on real estate does not contain an express provision to pay the mortgage indebtedness, no implied promise to pay it will arise. *Alexander v. Hergenroeder,* 215 Md. 326, 138 A. 2d 366 (1958). But the law with respect to a chattel mortgage on personal property is to the contrary. See Code (1957), Art. 21, § 47, which provides that "[a] mortgage of personal property shall be deemed to contain an implied covenant (unless the contrary is therein expressed) by the mortgagor to pay the debt and interest specified in said mortgage."

In this case, where an express covenant to pay the mortgage debt and interest, though not included in the bill of sale, was

embodied in the contract of sale, which, as we have already said, constitute one instrument, we think it is clear that when both instruments are read as one, the bill of sale—which was in substance a chattel mortgage—contained a covenant sufficient to maintain an action at law under Rule W75 b 2, and we so hold. But even if there were no express covenant to repay the chattel mortgage indebtedness, it appears, inasmuch as there was no expression to the contrary, that the chattel mortgage could be deemed to contain an implied covenant to pay the debt and interest specified therein pursuant to § 47 of Art. 21.

Moreover, as we read the opinions in *Boyd v. Goldstein* and *Alexander v. Hergenroeder,* both *supra,* there is nothing in either to support the proposition seemingly advanced by the appellant that these cases supersede the provisions of § 47 (of Art. 21). In the *Alexander* case, at p. 331, this Court, assuming that the mortgage was subject to the statute to the extent it related to personal property, found the facts, insofar as the wives of the mortgagors were concerned, to fall within the exception set out in the statute. In the *Boyd* case only real property was involved, and, as we have seen, there is no comparable statute as to mortgages of real property. Nor do we find anything in the provisions of Rule W75 b 2 (as to who may make a motion for a deficiency decree) excluding an equitable chattel mortgage or an implied covenant.

### (iii)

The final question is whether the doctrine of *res judicata* was properly applied in the law action. We think it was. The record shows that the enumeration of the alleged breaches of the covenant not to compete set forth in the action at law were substantially the same (if not identical) with those of which the appellant complained when on cross-examination in the equity proceeding he was asked to specify them. And, having elected to litigate the question of liability for damages in the equity action, and, as it turned out, without effect, the argument that *res judicata* should not have been applied in the law action is not convincing.

In *Sterling v. Local 438, etc.,* 207 Md. 132, 113 A. 2d 389 (1955), *cert. den.* 350 U. S. 875 (1955), *reh. den.* 350 U. S.

454

898 (1955), *reh. den.* 350 U. S. 943 (1956), we stated (at p. 140) that:

"Estoppel by judgment, which is *res judicata,* may be direct or collateral. If the second suit is between the same parties and is upon the same cause of action, a judgment in the earlier case on the merits is an absolute bar, not only as to all matters which were litigated in the earlier case, but as to all matters which could have been litigated. If, in a second suit between the same parties, even though the cause of action is different, any determination of fact, which was actually litigated in the first case, is conclusive in the second case."

We see no reason why the rule laid down in the *Sterling* case, should not be applied here where, although the action at law was filed before the filing of the cross-bill in the equity proceeding, the question of fact as to whether there was liability for damages was litigated and determined in the equity proceeding before the motion for summary judgment was heard and decided in the action at law. We hold therefore that the trial court was correct in granting summary judgment in favor of the appellee on the basis of *res judicata.*

> *Decree in equity affirmed; judgment at law affirmed; appellant to pay the costs in both cases.*