DANIEL ET AL. *v.* KENSINGTON HOMES, INC.

[No. 264, September Term, 1962.]

*Decided June 14, 1963.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, PRESCOTT, HORNEY and SYBERT, JJ.

*James Robert Miller,* with whom were *Miller & Miller* (of
Silver Spring) on the brief, for the appellants.

*James R. Miller* and *William M. Canby,* with whom were
*Miller & Miller* (of Rockville) on the brief, for the appellee.

4

BRUNE, C. J., delivered the opinion of the Court.

The controversy here is between Kensington Homes, Inc. (Kensington), the original plaintiff, now appellee, Cushing Daniel, Clarke Daniel and Raleigh Daniel (collectively the Daniels), intervening plaintiffs, now appellants, over a tract of land which Kensington claimed and the Daniels claimed under separate contracts with Perry Westland and his wife (owning a 50% interest), C. Willard Ashley and his wife (owning a 25% interest), and Suburban Land Co., Inc. (owning a 25% interest). Kensington and the Daniels sought to enforce their respective claims by bills for specific performance, the Daniels' being filed by them as intervenors in the original suit brought by Kensington. The Daniels appeal from an order of the Circuit Court for Montgomery County which granted Kensington's motion for summary judgment as against the Daniels and dismissed the Daniels' bill insofar as it sought on the one hand to bar Kensington from specific performance and on the other to obtain specific performance for themselves.

The case comes before us on an unsatisfactory record. It appears clearly from the opinion of the trial judge that he took into consideration the record in a prior equity suit in the same court between Kensington and the owners, yet the record in this case does not contain copies of the papers filed in those proceedings. The appellee has sought to supply this glaring defect in the record by printing pertinent parts of the record in the prior case as an appendix to its brief. The appellee asserted in its motion for summary judgment that the trial court "may take judicial notice" of the option agreement dated August 9, 1955, and recorded among the land records of Montgomery County on August 8, 1958. This was the agreement upon which its bill for specific performance was founded. It has not been formally filed as an exhibit nor offered in evidence in this case. The appellee has cited no authority for its proposition that the trial court could take judicial notice of it, nor has it cited any authority in this Court to support it or to support the trial court's having taken judicial notice of the proceedings in the prior equity case. In that case a cer-

tified copy of the agreement of August 9, 1955, was filed as an exhibit. The pleadings in this case did refer extensively to that agreement, and the appellants themselves, both in their bill of complaint as intervening plaintiffs and again in the affidavit which they filed in opposition to the appellee's motion for summary judgment, did inject the prior proceedings into the case and thereby invited the trial court to consider them. In these circumstances we think that they are not in a position to complain of the trial court's having considered the records in the prior case, including the copy of the agreement of August 9, 1955, and the fact of its record thereby shown. This is an exceptional case (see *Fletcher v. Flournoy,* 198 Md. 53, 60-61, 81 A. 2d 232), and it would serve no useful purpose to remand the case simply to have these papers, which would clearly be admissible, formally offered in evidence, when they have already been considered at the invitation, at least tacit, if not express, of the appellants. Cf. *Givner v. Cohen,* 208 Md. 23, 30-31, 116 A. 2d 357; *Walker v. D'Alesandro,* 212 Md. 163, 170-171, 129 A. 2d 148 (in each of which ordinances not properly proven were considered); *Joffre v. Canada Dry Ginger Ale, Inc.,* 222 Md. 1, 5, 158 A. 2d 631 (prescribed notice of intention to rely on foreign law not given, but tacit assumption of trial court and parties that law of another jurisdiction was controlling, accepted).

Kensington entered into a contract with the owners on March 31, 1955, for the purchase of approximately 53 acres of land in the Gaithersburg District of Montgomery County. Shortly afterwards the County instituted condemnation proceedings to acquire nearly 10 acres of the tract for school purposes. Kensington and the owners then entered into a new arrangement. Under it, the owners conveyed 26 out of the originally proposed total of 152 lots in the entire tract to Kensington for $1,800.00 per lot, payable partly in cash and partly in deferred instalments evidenced by notes secured by a deed of trust, and the parties also entered into the option agreement of August 9, 1955, above referred to. By this agreement the owners granted to Kensington an option which might be exercised at any time up to noon of August 9, 1958,

6

to purchase all of the remaining lots not taken by condemnation at a price of $1,800.00 per lot on terms similar to those relating to the 26 lots.

On September 10, 1957, Kensington filed a suit in equity (No. 20362) against the owners in the Circuit Court for Montgomery County. This suit sought: (a) reformation of the deed of trust and notes thereby secured, pertaining to the 26 lots above mentioned, so as to defer the final maturity date; (b) cancellation of interest on the notes; (c) an injunction against the defendants making statements reflecting on the financial standing of Kensington; (d) specific performance of obligations of the owners relating to streets, curbs, sidewalks and gutters needed for development of the 26 lots; (e) damages for losses incurred through the owners' delay in performing their contractual obligations; and (f) other and further relief. The defendants demurred, raising numerous objections, and their demurrer was sustained, with leave to Kensington to amend. The bill was held not to set up grounds for reformation, most of the claims which it set up were found to be for damages allegedly due to delay on the part of the owners, for which there was an adequate remedy at law, the prayer relating to derogatory statements was held not to be a proper subject for equitable relief, and the allegations of the bill with regard to the work done in connection with streets, curbs, sidewalks and gutters needed for the development of the 26 lots, were held to be too lacking in definiteness and certainty to support the granting of specific performance.

It appears clearly from the bill, the demurrer and Judge Anderson's opinion that the asserted obligations of the owners were based on the original agreement of March 31, 1955. The owners' demurrer is quite explicit on this point. In paragraph 7 it points out that two of the individual defendants were not parties to the March 31, 1955 agreement, that the August 9, 1955 agreement to which they were parties "only stated construction to be performed as to the optioned property, and the construction desired to be specifically compelled is for the twenty-six lots conveyed to the plaintiffs on Au-

gust 9, 1955, and said lots were specifically excluded from the construction provisions required in said agreement." The demurrer was sustained as to these two defendants.

Paragraph 8 of the demurrer made a similar contention on behalf of all of the defendant owners that the agreement of August 9, 1955, did not obligate any of them to do construction work anywhere except on optioned property. The principal ground for the court's holding as to the indefiniteness of the allegations of the bill with regard to construction work was that the bill failed to allege any regulations of the F. H. A., of the V. A. or of Montgomery County relating to streets, curbs, sidewalks, storm sewers, percolation tests, etc., and also failed to allege F. H. A. or V. A. approval of financing, all of which were provided for under the terms of the agreement upon which the bill was based, which were quoted in Judge Anderson's opinion.

Judge Anderson described the prayer for specific performance of the construction agreement as containing "the meat of the bill of complaint." From the fact that he granted leave to amend, it seems evident that he did not regard the provisions of the agreement as intrinsically too vague to be enforceable, but only as being insufficient because they were not supplemented by sufficient allegations as to what the relevant regulations required. Both *Brummel v. Clifton Realty Co., Inc.,* 146 Md. 56, 125 A. 905, and *Edison Realty Co. v. Bauernschub,* 191 Md. 451, 62 A. 2d 354, which are among the cases referred to by Judge Anderson, hold that specific performance of a construction contract to complete a house may be decreed, in the discretion of the court, if the work to be done is clearly defined. See also *Laurel Realty Co. v. Himelfarb,* 191 Md. 462, 62 A. 2d 263. The general rule of equity against specific performance of a contract to build or repair is not absolute and without exception. See *Ward v. Newbold,* 115 Md. 689, 696, 81 A. 793, where, however, specific performance was denied because of the indefiniteness of the contract.

A full statement of the case calls for an outline of the pleadings, motion and affidavits, and even an outline is lengthy.

The present suit was instituted by Kensington on August

8, 1958, which was the same day that the option agreement of August 9, 1955, was recorded and one day before that agreement would expire. In the bill Kensington alleged that it had exercised its option, that it was ready, able and willing to settle for the lots subject to the agreement, and asked specific performance of the owners' obligation to convey the lots to Kensington. The defendant owners demurred to the bill, contending, *inter alia,* that the alleged contract was indefinite and uncertain and incapable of being specifically enforced and that the alleged contract had been held unenforceable in equity in the earlier case (Equity No. 20362).

*Pendente lite,* the owners entered into the agreement with the Daniels dated April 23, 1959, relating to the same land which Kensington sought to have conveyed to it, upon which the Daniels base their claim. This contract, which was filed as an exhibit with the Daniels' bill, bears strong internal evidence that the Daniels were well aware on the date of their agreement of a question as to the ability of the owners to convey the property to them. Clause 3(c) of the contract, which was typewritten into a printed form, stated in part that settlement should be within a year from the date of acceptance of the contract by the sellers (owners), but then added that this was "with the understanding that in the event the seller is unable to deliver clear title to the property within one year from the date of acceptance of the contract, purchaser at his option may extend the date of settlement for a period of six months." This was followed by a further statement that it was "understood" that in the event the contract was extended for six months "and the seller at that time is unable to convey clear title to the property then and in that event this contract shall become null and void and all of the parties shall be released from any further liability thereunder."

The Daniels filed their intervening bill for specific performance on April 5, 1960, seeking primarily the conveyance to them of the same land which Kensington was seeking to have conveyed to it. In their bill they alleged, among other things, that the attorney for one of the owners had informed them that the owners were about to convey the land to Kensington

in settlement of litigation and would not convey the land to the Daniels, and the Daniels claimed that the prior proceedings (Equity No. 20362) had determined that Kensington was not entitled to specific performance of the agreement of August 9, 1955, and that it was too indefinite to be capable of specific enforcement.

Kensington answered the Daniels' intervening bill on November 29, 1960, challenging these contentions and alleging that the Daniels had both actual knowledge and constructive notice of the contractual rights of Kensington before they made their agreement with the owners. The individual owners filed a somewhat similar, but fuller, answer to the intervening bill on February 16, 1961; and the corporate owner filed its similar answer on September 16, 1961.

On November 6, 1961, the owners conveyed the property to Kensington. On May 22, 1962, the defendants withdrew their demurrer to Kensington's bill and filed their answers thereto, alleging that Kensington had not strictly performed all of the requirements of its contract, that by mutual agreement the owners and Kensington had modified its strict terms, that in settlement of this and other litigation, the owners had agreed to convey the lands to Kensington in recognition of its equitable rights created by the option agreement of August 9, 1955, that the Daniels had full knowledge of Kensington's prior equity, and that the owners had therefore conveyed the property to Kensington.

Kensington filed its motion for summary judgment on June 12, 1962, alleging that its option agreement had been duly recorded, that the Daniels had notice thereof as a matter of law, that they became purchasers with notice and were not entitled to relief, that the Daniels also had actual notice, that the land had been conveyed to Kensington by the owners and that the case was moot. The motion was accompanied by a copy of the deed and by an affidavit of one of the individual owners alleging actual notice to two of the Daniels of the Kensington contract and claim prior to April 23, 1959, that the owners might not have the legal right to convey the property to the Daniels and that they might convey it to Kensington.

The Daniels filed an affidavit in opposition to the motion, executed by Cushing Daniel. In it he denied that there had been any discussion of a contract of sale to Kensington of the 35 acres involved in this case or of the possible lack of right of the owners to convey the land to the Daniels. He did admit knowledge of a question with regard to the 26 lots (above mentioned), which were the subject of another agreement between the owners and the Daniels.

The affidavit also alleged (argumentatively) that if the Daniels were deemed by law to have notice of the option contract of August 9, 1955, they would also have had notice of the prior proceedings [Equity No. 20362] "in connection with said Option Contract." The affidavit further asserted that, as shown by the corporate owner's answer to the Daniels' intervening bill, the conveyance by the owners to Kensington on November 6, 1961, was made pursuant to a new contract between the owners and Kensington.

The appellants raise two questions by their brief. The first is whether the pleadings and exhibits on file, together with the supporting and opposing affidavits, show that there was no dispute as to any material fact and that the appellee was entitled, as a matter of law, to the dismissal of the appellants' prayers for specific performance. The second is whether the trial court erred in dismissing these prayers, summarily, without hearing evidence as to the respective equities of the two contract holders. These two questions are so closely related that we shall consider them together.

The appellants, in support of their contention that there are a number of factual issues between the parties which should be resolved, list seven matters. These are: (a) *res judicata;* (b) the certainness of Kensington's contract; (c) whether the owners could convey clear title to the Daniels; (d) notice; (e) whether the Daniels had a conditional option or a contract; (f) whether the owners, as against the Daniels, had the right to use the property to settle pending litigation; and (g) whether they conveyed the land pursuant to their original agreement with Kensington or pursuant to a new agreement.

We have said at the outset of this opinion that the trial court might consider the prior equity proceedings (No. 20362) and that notwithstanding the unsatisfactory manner in which the record comes to us, we may also consider them. The effect of those proceedings—whether they do or do not amount to *res judicata* of the questions in this case—was a matter which the trial court could properly consider in ruling on a motion for summary judgment. *Sterling v. Local 438, Etc.,* 207 Md. 132, 139-40, 113 A. 2d 389; *Brown v. Fraley,* 229 Md. 445, 454, 184 A. 2d 710.

Judge Shure, we think, correctly held that the prior equity suit did not raise the bar of *res judicata* as to the present suit. Our full review of those proceedings shows that the prior suit was not even based on the same contract as that here involved, nor did it pertain to the same land. Even as to the rather similar (but not identical) terms of the earlier contract there relied on by Kensington, we think that Judge Anderson's holding was not that those terms were too vague to be enforceable. His holding was only that as presented by the bill, without amplification by a statement of the pertinent requirements of the regulations of two federal agencies or of the county, which regulations were referred to but not set out in or annexed to the contract there involved, the allegations with regard to construction work which the owners were required to do were too indefinite for specific performance.

With regard to the question of certainty apart from any question of *res judicata,* we suppose that the attack is based upon the provisions of the option agreement requiring the owners to lay out and develop lots so as to meet "the requirements of the Federal Housing Administration, the Veterans Administration and Montgomery County for single-family residences, including but not limited to proper percolation tests, the availability of public water, and the construction of proper streets, sidewalks, curbs, gutters, cross-walks, and storm drains." All of these requirements appear to be perfectly ascertainable by reference to the requirements of the named agencies or of the County. We find nothing to suggest any impossibility of equity entering an effective decree to require

compliance with these undertakings. See *Cohen v. Baltimore County,* 229 Md. 519, 185 A. 2d 185, in which this Court upheld the complainant's right to specific performance of the County's agreement to construct a road and construct gutters and curbs thereon. We think it unnecessary to go into the question as to whether Kensington could require specific performance of the contract to sell the land and be awarded damages for any subsequent failure of the owners to comply with the terms of the agreement above stated, if the court should later find (perhaps because of the difficulty of supervision) that specific performance of those obligations was not an appropriate remedy.

The only other question which we deem it necessary to decide is the effect of the Daniels' constructive notice of Kensington's rights under the option agreement. This agreement was a proper agreement to be recorded, and when recorded, its recordation had the same effect as the recording of a deed. Code (1957), Art. 21, §§ 1, 10, 16, and 26. It is binding as against subsequent purchasers, and the Daniels are charged with notice of it. *Green v. Early,* 39 Md. 223, 229; *Ivrey v. Karr,* 182 Md. 463, 473, 34 A. 2d 847; *Westpark, Inc. v. Seaton Land Co.,* 225 Md. 433, 171 A. 2d 736. See also 2 *Merrill on Notice,* §§ 925, 935, 949, 975; 2 *Pomeroy's Equity Jurisprudence* (5th Ed.), § 730. An option when exercised is enforceable by specific performance as a contract of sale. *Messina v. Moeller,* 214 Md. 110, 133 A. 2d 75. The Daniels allege no fact at all which could suggest an estoppel against Kensington's asserting its rights under its recorded option agreement. We think it impossible for them, in the face of the constructive notice which they had from the recordation of Kensington's agreement, to put themselves in the position of bona fide purchasers for value. A contract for the sale of realty is enforceable against a party acquiring title with knowledge of the contract. *Engler v. Garrett,* 100 Md. 387, 59 A. 648. *Lissau v. Smith,* 215 Md. 538, 547-48, 138 A. 2d 381. We, therefore, hold that, as a matter of law they could not assert their claim to specific performance so as to prevail against Kensington, and the trial court was accordingly cor-

rect, on Kensington's motion for summary judgment, in dismissing the Daniels' bill insofar as it sought to do so.

We do not rest our conclusion upon any actual notice on the part of the Daniels of Kensington's contract which Kensington asserts and the Daniels deny. Nor do we rest it upon the actual conveyance *pendente lite* made by the owners to Kensington. In that connection, we merely note that the Daniels do not deny that the option agreement was at least *a* reason for the making of that conveyance. Since we do not rest our decision upon either of these grounds any dispute as to facts relating thereto is not a dispute with regard to a material fact and does not prevent the entry of a summary judgment under Maryland Rule 610. Whether the agreement between the Daniels and the owners constituted a contract of sale or an option, presents, in our view, only a question of possible academic interest.

We note that no question has been raised as to the possible effect of the present suit as *lis pendens* at the time when the Daniels made their agreement with the owners, and we shall not discuss the matter.

In accordance with our view that the Daniels are not entitled to specific performance of their agreement (whatever it was) with the owners so as to defeat Kensington's rights under its prior, recorded agreement with the owners, the order of the Circuit Court is affirmed.

> *Order affirmed; the costs to be paid by the appellants.*